402 A.2d 995

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Frederick TYSON, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 8, 1979.

Decided May 31, 1979.

Reargument Denied June 29, 1979.

346

---

Raymond J. Takiff, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Sheldon M. Finkelstein, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

OPINION

MANDERINO, Justice:

Appellant, Frederick Tyson, was convicted in a nonjury trial of murder in the third degree. Post-verdict motions were denied and a sentence of ten to twenty years was imposed. Appellant now appeals to this Court pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, Art. II, Section 202, Subsection 1, 17 P.S. § 211.202(1) (Supp.1978–79).

Appellant was convicted of the shooting death of his brother, Chester Tyson, with whom he lived. A neighbor testified that she saw the victim enter the Tyson family home and approximately twenty minutes later heard shots at which time she called the police. The police arrived at the house and, after knocking on the front and back doors, looked through the windows and observed someone in the dining room. An officer then identified himself and ordered the individual to open the door. Appellant opened the door and informed the officer that his brother had been shot. Appellant said be thought someone was upstairs but no one else was found following a search of the house. The basement, where a German Shepard dog was kept, was not searched. The victim, who was still alive, was removed to a hospital where he died approximately one month later. The medical examiner testified that the gunshot wound was the cause of death.

Appellant raises two issues for our consideration in this appeal. First, that he was incompetent to stand trial and second, that he was not guilty as a matter of law because he lacked the mental capacity required under the *MacNaghten* Rule.

Although the record is clear that appellant had a history of mental illness prior to the shooting death of his brother, that fact is not dispositive of the issues before us. Even though one has a history of mental illness that person may, at a given time, be competent to stand trial and may have been legally sane at the time of the commission of the

crime. In this case a hearing was held six days before appellant's trial commenced in order to determine whether appellant was competent to stand trial. The testimony of two qualified psychiatrists established that appellant understood the nature of the charges and was capable of cooperating with counsel in the preparation of his defense. Nonetheless, appellant attacks the basis of their opinions and also contends that the colloquy conducted six days later at the beginning of the trial illustrates his incompetency and alleges the trial judge erred by failing to order a new examination during the trial.

The prosecution asserts that appellant has waived this claim by failing to raise it in post-verdict motions, even though appellant did not properly object at the time of the trial. Ordinarily, the failure to raise an issue in post-verdict motions would constitute a waiver. *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975). We have concluded however that when the issue presented is whether a person was competent to stand trial, the waiver rule is not applicable. *See Commonwealth v. Marshall,* 456 Pa. 313, 319, 318 A.2d 724, 727 (1974). We therefore turn to the merits of the issue of competency.

The test of an accused's competency to stand trial is his "ability to comprehend his position as one accused of murder and to cooperate with his counsel in making a rational defense." (Citations omitted.) *Commonwealth ex rel. Hilberry v. Maroney,* 424 Pa. 493, 495, 227 A.2d 159, 160 (1967). A finding of competency by the trial court will not be reversed unless it is unsupported by the record. *Commonwealth v. Kennedy,* 451 Pa. 483, 305 A.2d 890 (1973).

In this case, while appellant did have a history of mental illness, there is adequate support in the record for the trial judge's finding of fact that appellant was competent before and during the trial. Two qualified psychiatrists, both of whom had personally examined the appellant, testified at the competency hearing that appellant qualified under the standards of this Court to stand trial. Appellant

also testified at the competency hearing and stated that he knew he was charged with killing his brother in July of 1974. He also indicated that he was able to cooperate with his attorney in preparing a defense. Based on these facts, the court properly found appellant competent to stand trial. Six days later, appellant's trial commenced. At the commencement of trial, the trial judge secured the presence of a member of the court's psychiatric staff to observe appellant's behavior during the scheduled jury trial waiver colloquy. The court's staff psychiatrist then testified that, based on his observation of appellant's conduct during the jury waiver hearing, and on appellant's responses to the questions asked of him by the court and counsel during the colloquy, he was of the opinion that appellant was competent to stand trial. The trial court concurred in that evaluation and trial began.

Expert testimony at the time of appellant's competency hearing indicated appellant needed medication to sustain a level of competency. Prior to the beginning of his trial appellant did not receive medication for three days. However, the psychiatrist who observed him during the jury trial waiver colloquy and testified as to appellant's competency to stand trial also testified that the level of drugs in the bloodstream would not immediately decrease, that appellant was functioning well, and that appellant did not appear to have been adversely affected by the three-day hiatus in medication. Appellant received his medication daily during the trial and the behavior of appellant during the trial did not at any time warrant the ordering of another competency examination.

We conclude that the trial judge did not err in finding appellant competent to stand trial.

Appellant also argues that at the time of the murder he was insane as a matter of law. Appellant does not challenge the long standing definition for insanity in this jurisdiction—the *MacNaghten* test: an accused is legally insane if "at the time he committed the act, either he did not know the nature and quality of the act or he did not know that it

was wrong." *Commonwealth v. Demmitt*, 456 Pa. 475, 481, 321 A.2d 627, 631 (1974).

In cases where there is sufficient evidence present to raise the issue of insanity, the burden of proof is upon the prosecution to establish the appellant's sanity beyond a reasonable doubt. *Commonwealth v. Delker*, 467 Pa. 305, 356 A.2d 762 (1976). At the time of appellant's trial in 1975, it was clear under our case law that once the issue of insanity was raised by the evidence, the burden of proof rested with the prosecution. *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974) and *Commonwealth v. Demmitt, supra.* The issue of insanity in this case was raised during the cross-examination of two of the police officers who were present at the time of appellant's arrest and by expert testimony presented on behalf of the accused.

In order to sustain its burden of proof the prosecution offered into evidence testimony of lay witnesses establishing that appellant was sane at the time of the crime. Two police officers who were present at the scene shortly after the shooting testified that appellant acted like a "bed bug," and it was explained that this meant that they felt appellant was "crazy." The officers also stated that appellant acted too calm and too passive, but this testimony does not establish that appellant did not know the nature and quality of his act and right from wrong. Further evidence established that appellant had attempted to hide the gun immediately after the shooting and when the police arrived on the scene he suggested that someone else was inside the house, and that he displayed remorse over the incident. Moreover within five hours after the shooting, appellant gave a statement to the police admitting he shot the victim. This statement was quite lucid and coherent and indicated that appellant knew what he had done and that it was a wrongful act.

There was expert testimony which, if accepted, could have established appellant's insanity. However, the factfinder rejected this testimony and we find no abuse of discretion in

that rejection. This testimony was rejected because none of the experts had examined appellant for the purpose of determining his sanity at the time of the shooting and none of them had examined appellant at the time of the incident nor shortly thereafter. The first of the four experts, Mr. Levitt, although he testified appellant showed a "paranoid theme," candidly admitted that he does not examine individuals for the purpose of ascertaining their sanity under the *MacNaghten* rule. He testified his report was "tenative" and admitted that he only examined appellant for the purposes of determining his competency to stand trial. The second expert, Dr. Von Schlichten, testified that he doubted whether appellant was sane at the time of the shooting. However, Dr. Von Schlichten based his opinion upon his three examinations of appellant, the first of which occurred three and one-half months after the shooting and upon a report dating back to 1970 which had been prepared by someone else. Dr. Von Schlichten also admitted that his three examinations were devoted to determining appellant's competency to stand trial and he never examined him for the purpose of determining sanity at the time of the shooting. The third expert, Dr. Boxer, examined appellant nine months after the incident and again this examination was for the sole purpose of determining competency to stand trial. The testimony of this expert concerning appellant's sanity was based upon tests administered by the first expert, Mr. Levitt. Finally, the fourth expert, Dr. Guy, although testifying that appellant did not understand the differences between right and wrong, based his opinion entirely upon his examination of appellant four years prior to the shooting and upon the testimony he heard in court. Dr. Guy admitted he had not examined appellant for the purpose of determining his sanity at the time of the incident. We cannot say that the factfinder abused her discretion in rejecting the testimony of these experts.

It is true that all of the evidence indicating sanity is from lay sources while all the evidence indicating insanity is from expert witnesses. However, the evidence of

a lay witness may be sufficient to establish the sanity of an accused. *Commonwealth v. Zlatobich*, 440 Pa. 388, 269 A.2d 469 (1970). The prosecution need not offer expert testimony in order to rebut expert testimony on behalf of the accused. *Commonwealth v. Bruno*, 466 Pa. 245, 352 A.2d 40 (1976); *Commonwealth v. Demmitt, supra.* The only requirement is that there must be sufficient evidence from *any source whatsoever* to support a finding of sanity beyond a reasonable doubt. *Commonwealth v. Demmitt, supra.*

■ We reiterate that a history of mental illness does not settle the issues of competency and insanity. In this case, the evidence established that appellant could comprehend the charges against him and could cooperate with his counsel throughout his trial and that appellant knew the nature and quality of his actions and the difference between right and wrong at the time of the shooting.

The judgment of sentence is affirmed.

## JUDGMENT

On CONSIDERATION WHEREOF, it is now here ordered and adjudged by this Court that the judgment of the Court of Common Pleas, Trial Division, Philadelphia COUNTY, be, and the same is hereby affirmed.