419 A.2d 492

**COMMONWEALTH of Pennsylvania,**

v.

**Horace KNIGHT, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1979.

Filed March 14, 1980.

*Atkins v. Urban Redevelopment Auth.*, 263 Pa.Super. 37, 396 A.2d 1364 (1979).

352

John W. Packel, Assistant Public Defender, Chief, Appeals Division, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before PRICE, SPAETH and LIPEZ, JJ.

SPAETH, Judge:

Appellant was charged with burglary,[1] rape,[2] robbery,[3]

1. 18 Pa.C.S. § 3502.

two counts of involuntary deviate sexual intercourse,[4] and simple[5] and aggravated assault.[6] He was tried by a judge sitting without a jury and was acquitted on the charges of rape, robbery,[7] and involuntary deviate sexual intercourse but convicted of burglary and aggravated assault. Post–verdict motions were denied and he was sentenced to five to ten years imprisonment on the aggravated assault conviction and to a concurrent term of ten years probation on the burglary conviction. On this appeal appellant raises arguments with respect to his competency to stand trial, the sufficiency of the evidence, and the propriety of the sentences.[8]

The facts were as follows. At 9:20 in the evening of July 10, 1976, the complainant, a sixty–nine year old woman, stepped out onto the front porch of her apartment building to get the correct time from a clock on the side of a funeral parlor next door. As she turned back to reenter the apartment building she was pushed from behind by appellant, who demanded that she give him thirty–five cents. When she told appellant that she had no money, he shoved her inside the open front door, followed her inside, and locked the door behind him. Inside the hallway, he threw her to the floor and began to beat her about the face, head, and abdomen, and to tear off her clothes. He then got down on top of her, according to the complainant, and engaged in

2. 18 Pa.C.S. § 3121.

3. 18 Pa.C.S. § 3701.

4. 18 Pa.C.S. § 3123.

5. 18 Pa.C.S. § 2701.

6. 18 Pa.C.S. § 2702.

7. The judge sustained a demurrer to the robbery charge at the close of the Commonwealth's case in chief.

8. Appellant's brief is 101 pages long excluding the table of contents, the table of citations, and the addendum, and thus is far in excess of the maximum length set forth in Pa.R.A.P. 2135. Because of the complex and important issues involved, appellant requested and was granted permission to file such an over–sized brief.

anal, vaginal, and oral intercourse with her.[9] When she screamed for help from her neighbors and the police, he continued to beat her, and threatened her with a knife. She testified that she saw no knife, however. The police finally arrived, forced open the front door, and apprehended appellant.

## –1–

At appellant's request a competency hearing was held before trial. At the conclusion of this hearing the lower court determined that appellant was competent to stand trial. Appellant argues that the lower court erred both in placing the burden of proving incompetency on him and in holding him competent to stand trial.

### –a–

Section 403(a) of the Mental Health Procedures Act of 1976 (1976 Act) provides that "[t]he moving party shall have the burden of establishing incompetency to proceed by clear and convincing evidence." 50 P.S. § 7403(a).[10] In imposing the burden of proving his incompetency on appellant, the lower court was thus acting in accordance with the statutory law. *Commonwealth v. Hunt*, 259 Pa.Super. 1, 6, 393 A.2d 686, 689 (1978); *see Commonwealth v. Kennedy*, 451 Pa. 483, 305 A.2d 890 (1973). Appellant argues that even so, the burden of proving his competency should have been placed on the Commonwealth.

Appellant's main argument in support of this proposition is that competency to stand trial is an element of the offense, so that the Commonwealth must prove it beyond a reasonable doubt. *See Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974); *see also Commonwealth v. Sojourner*, 268 Pa.Super. 488, 408 A.2d 1108 (1979). Appellant points to

**9.** It is apparent that the trial judge was not persuaded by this part of the complainant's testimony, for as noted, he acquitted appellant of rape and involuntary deviate sexual intercourse.

**10.** Prior to the enactment of section 403(a) of the 1976 Act the burden was upon the person asserting mental incompetence to prove his incompetency by "a preponderance of the evidence." *Commonwealth v. Kennedy*, 451 Pa. 483, 487, 305 A.2d 890, 892 (1973).

the Crimes Code definition of the term "element of an offense,"[11] and to the case law, and contends that incompetency may negate culpability just as a claim of ignorance, mistake, or duress may. *See Commonwealth v. Jones*, 242 Pa.Super. 303, 312, 363 A.2d 1281, 1285 (1976) (discussing ignorance, mistake, or duress as opposed to entrapment).

Appellant also argues that even if competency is not an element of the offense, it is so similar to an element that the Commonwealth should be required to prove it. In support of this argument appellant discusses the defenses of entrapment and insanity, contending that incompetency is a defense similar to them. *See Commonwealth v. Lynch*, 477 Pa. 390, 383 A.2d 1263 (1978); *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977); *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974). According to appellant, just as in a case where a question of a defendant's sanity arises the Commonwealth must prove sanity beyond a reasonable doubt, so too, where, as here, a question of competency arises, the Commonwealth should be required to prove competency beyond a reasonable doubt. *See Commonwealth v. Tyson*, 485 Pa. 344, 402 A.2d 995 (1979); *Commonwealth v. Demmitt, supra.*

While appellant has presented a very full discussion of the issue of burden of proof with respect to elements and defenses, nevertheless his conclusions as to the burden of proving competency must be rejected. A defendant's competency to stand trial is not an element of the offense, and his incompetency is not a defense. Competency involves a defendant's mental state at trial, not his mental state at the time of the offense. The fact that a defendant becomes

---

11. Section 103 of the Crimes Code defines "element of an offense" as follows:

Such conduct or such attendant circumstances or such a result of conduct as:

(1) is included in the description of the forbidden conduct in the definition of the offense;

(2) establishes the required kind of culpability;

(3) negatives an excuse or justification for such conduct;

(4) negatives a defense under the statute of limitation; or

(5) establishes jurisdiction or venue.

incompetent after the offense does not affect⁰his culpability for its commission, although it may affect the timing of his trial. The elements of the crime, including the defendant's mens rea, are proved by evidence of the defendant's mental state and acts at the time the offense is committed. The defendant's competency to stand trial is proved by evidence of his mental state at the time of trial.[12]

Appellant argues, however, that the constitutional guarantees of due process of law require that the Commonwealth bear the burden of proving a defendant's competency at the time of trial. In support of this argument appellant cites *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), where the Court stated:

> Lest there remain any doubt about the constitutional statute of the reasonable doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

*Id.* at 364, 90 S.Ct. at 1073.

Appellant's reliance on *Winship* is misplaced, for competency is not a "fact necessary to constitute the crime with which [a defendant] is charged; " as just stated, competency is not an element of an offense. Appellant's citation of *Mullaney v. Wilbur*, 421 U.S. 634, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), and *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), also does not persuade

12. Incompetency to stand trial does not fit within any of the definitions of "element of an offense" set forth in section 103 of the Crimes Code. *See* note 11 *supra.* The only argument appellant has offered for the proposition that an element of an offense may involve facts at the time of trial and not facts at the time of the commission of the offense is that conduct establishing venue is an element of an offense, 18 Pa.C.S. § 103(5), but that prejudicial publicity at the time of trial may require that the venue of the action be changed. Appellant's argument on this point confuses venue in the first instance with change of venue under due process of law. Indeed, a consideration of the due process change of venue cases demonstrates that there is no due process requirement that the Commonwealth bear the burden of proving a defendant's competency.

us, as those cases, like *Winship*, involved the burden of proving matters relevant to a defendant's mental state and actions at the time the offense was committed.

We agree with appellant that a "conviction of an accused person while he is legally incompetent violates due process." *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). *See Commonwealth v. Davis*, 459 Pa. 575, 578, 330 A.2d 847, 848 (1975); *Commonwealth v. Kennedy, supra; Commonwealth v. Harris*, 431 Pa. 114, 243 A.2d 408 (1968); *Commonwealth ex rel. Hilberry v. Maroney*, 424 Pa. 493, 227 A.2d 159 (1967).[13] However, while due process requires that a defendant be competent, it does not further require that the Commonwealth bear the burden of proving that a defendant is competent. The fact that a right is guaranteed by due process does not mean that a defendant claiming a violation of that right may not be required to bear the burden of proving the violation. In *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the defendant bore the burden of proving that a jury panel system that afforded women an automatic exemption from jury service violated his rights under the Sixth and Fourteenth Amendments. Where a defendant claims that his right to a fair trial will be violated because of extensive pre–trial publicity, he bears the burden of proving that he will be prejudiced.[14] *Commonwealth v. Casper*, 481 Pa. 143, 392 A.2d 287 (1978); *see Pennsylvania Power & Light Co. v. Gulf Oil Corp.*, 270 Pa.Super. 514, 542, 411 A.2d 1203, 1218 (1979) *citing, Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639,

**13.** *In Commonwealth v. Kennedy, supra*, the Supreme Court stated:
 A man's right to a fair trial and a meaningful defense strike at the heart of due process of the law. If a defendant is incapable of cooperating with his defense counsel, because of mental illness he cannot take advantage of the basic protections the law affords to all men. Moreover, the United States Supreme Court, as well as this Court, have consistently ruled that legal counsel is an absolute necessity in a criminal trial, and, yet, if a man is provided with counsel, but unable to cooperate with his counsel because of mental illness the protections which counsel can provide become a nullity.
 451 Pa. at 488–89, 305 A.2d at 892.

**14.** *See* note 12 *supra*.

1642, 6 L.Ed.2d 751 (1961). A defendant claiming that he has received ineffective assistance of counsel must prove that counsel was ineffective. *Commonwealth v. Sherard*, 483 Pa. 183, 189, 394 A.2d 971, 975 (1978); *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

–b–

■ Appellant next argues that even if the burden of proving his incompetency to stand trial was properly his, still the lower court erred in finding him competent on the facts of this case. Since we have held that appellant did bear the burden of proving incompetency, the question before us is whether appellant proved by "clear and convincing" evidence that he was incompetent.[15] *See* 50 P.S. § 7403(a); *Commonwealth v. Harper*, 479 Pa. 42, 387 A.2d 824 (1978).

■ Section 402(a) of the 1976 Act defines competency as follows:

Whenever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense, he shall be deemed incompetent to be tried, convicted or sentenced so long as such incapacity continues.

50 P.S. § 7402(a).

Thus, under the 1976 Act there are two questions to be considered in determining appellant's competency; first, his ability to understand the nature and object of the proceedings; and second, his ability to participate and assist in his defense. *See Commonwealth ex rel. Hilberry v. Maroney,*

**15.** In holding appellant competent the lower court stated that appellant had failed to prove his incompetency by a preponderance of the evidence. N.T. Competency Hearing at 136. When the court was reminded that section 402(a) of the 1976 Act required that the burden be met by clear and convincing evidence, it responded that if appellant had not proved incompetency by a preponderance of the evidence, he also had not proved it by clear and convincing evidence. N.T. Competency Hearing at 137–38.

*supra* (pre–1976 Act decision; competency depends on defendant's ability to comprehend his position and to cooperate with counsel in making a rational defense).

The decision as to a defendant's competency to stand trial rests within the discretion of the trial judge. *See Commonwealth v. Smith*, 227 Pa.Super. 355, 324 A.2d 483 (1974). In deciding the question of competency, however, the judge should enter upon a "careful and complete" inquiry, and his decision should be an informed one, based on evidence. *Commonwealth v. Smith, supra*, 227 Pa.Super. at 365, 324 A.2d at 488, *citing, United States v. Crosby*, 462 F.2d 1201, 1203 (D.C. Cir. 1972). Where the decision is not based on proper or sufficient evidence we will order the case remanded so that the judge may make an informed decision. *See Commonwealth v. Phillips*, 468 Pa. 400, 364 A.2d 255 (1976) (remanded where record barren of any basis for finding defendant competent at time of trial); *Commonwealth v. Marshall*, 456 Pa. 313, 318 A.2d 724 (1974) (remanded where no evidence to justify finding of competency); *Commonwealth v. Hunt, supra* (remand where court determined competency on the basis of psychiatric report prepared five and one–half months before trial).

At the competency hearing in the present case Dr. Richard Schwartzman testified as an expert in psychiatry on behalf of the Commonwealth. Dr. Schwartzman had interviewed appellant in October 1976, and again on December 29, 1976, the day before the competency hearing. He described appellant as mentally retarded with some evidence of organic brain syndrome and schizophrenic traits, but concluded that he was competent to stand trial. He testified that when asked, appellant had described a lawyer as the person who "tries to get you out, tries to help you," the district attorney as a person who was "trying to keep you in jail," and the judge as the person who "sees if you are telling the truth," and that appellant told him that if found guilty, "they put you in the penitentiary or put you in a program." Dr. Schwartzman also testified that appellant had described to him the factual basis for the charges; that he had not had

great difficulty communicating with appellant; that he believed appellant knew to whom he was speaking and was oriented in time and place; and that in his opinion, appellant could assist in his defense. Dr. Schwartzman did admit that appellant could sometimes become hysterical, and loose, and arbitrary in his response, but he also said: "I believe that he is able to cooperate if he wants to, and if the situation is so structured that the questions are clearly defined, and he understands exactly what is being asked of him. If the situation is ambiguous, he can become agitated, because he has some difficulty because of a lowered intelligence in following the proceedings. So if things are taken slowly and clearly, and the situation is explained to him, I feel quite sure that he could cooperate in assisting his attorney and in trial proceedings." N.T. Competency Hearing at 34.

Dr. Perry Berman testified for the defense. He said that he had interviewed appellant in September and December, 1976, and that each interview had lasted approximately one hour and twenty minutes. He concluded that appellant was incompetent. In support of this conclusion he testified that appellant often gave arbitrary and incoherent answers to his questions, especially questions about sex. He further testified that appellant's stuttering and lack of proper enunciation further compounded his communications problems, although he did admit that at times appellant's answers were clear and made sense. Dr. Berman also testified that he had doubts as to appellant's comprehension of the proceedings because of appellant's statements to him that the accusation against him was that he had "raped an eighty–nine year old woman," that he thought that this rape charge had been dropped because he didn't "have sex with her," and that he was going to prove that he had not done burglary "because he didn't take nothing."

This evidence demonstrates that the lower court committed no abuse of discretion in finding appellant competent to stand trial. This was not a case where the evidence of incompetency was uncontradicted. *See Commonwealth v. Davis, supra* (testimony that defendant was

incompetent was uncontradicted); *Commonwealth v. Kennedy, supra* (same). Dr. Schwartzman's testimony supported the lower court's finding that although mentally deficient, appellant had a sufficient understanding of the nature and object of the proceedings and sufficient ability to participate and assist in his defense. Dr. Berman's testimony concerning appellant's description of the incident further supported the finding that although he was unclear as to some of the legal definitions, appellant understood the factual basis for the charges. Dr. Berman's testimony also corroborated, to some extent, Dr. Schwartzman's opinion that appellant could communicate with counsel, for Dr. Berman admitted that appellant's answers at times were clear and made sense.

–2–

Appellant next argues that the Commonwealth failed to prove that he was sane when he committed the offenses. The test in Pennsylvania for determining legal insanity is the M'Naghten test: "[A] defendant is legally insane if, 'at the time of the act, either he did not know the nature and quality of the act or he did not know that it was wrong.'" *Commonwealth v. Bruno*, 466 Pa. 245, 251, 352 A.2d 40, 43 (1976), *quoting Commonwealth v. Demmitt, supra*, 457 Pa. at 481, 321 A.2d at 631; *see Commonwealth v. Tyson*, 485 Pa. 344, 402 A.2d 995 (1979); *Commonwealth v. Hamilton*, 459 Pa. 304, 329 A.2d 212 (1974), *cert. denied*, 420 U.S. 981, 95 S.Ct. 1411, 43 L.Ed.2d 663 (1975). Here the evidence offered by appellant raised the issue of his sanity at the time the crimes were committed. Thus the burden was on the Commonwealth to prove appellant's sanity beyond a reasonable doubt. *Commonwealth v. Tyson, supra; Commonwealth v. Delker*, 467 Pa. 305, 356 A.2d 762 (1976); *Commonwealth v. Demmitt, supra.*

In determining whether the Commonwealth met this burden, we must view the evidence in the light must favorable to the Commonwealth and give the Commonwealth the benefit of all reasonable inferences arising from the evidence. *Commonwealth v. Bruno, supra; see Com-*

*monwealth v. Robson*, 461 Pa. 615, 625, 337 A.2d 573, 578 (1975); *Commonwealth v. Steward*, 263 Pa.Super. 191, 198–200, 397 A.2d 812, 815–16 (1979). The Commonwealth may meet its burden of proof either by expert testimony or by lay testimony. *Commonwealth v. Tyson, supra; Commonwealth v. Bruno*, supra; *Commonwealth v. Zlatovich*, 440 Pa. 388, 269 A.2d 469 (1970).

Dr. Berman testified that in his opinion appellant was insane at the time he attacked the complainant. Dr. Berman's testimony at the competency hearing was also introduced in evidence as supporting his view that appellant was insane. An assistant public defender who tried to interview appellant at the police station shortly after his arrest also testified concerning appellant's sanity. This witness recalled that appellant had been very incoherent immediately after his arrest. On rebuttal the Commonwealth offered the testimony of Dr. Schwartzman, who expressed the opinion that appellant had been sane when he committed the offenses. Dr. Schwartzman stated that based upon his own interviews with appellant and the facts presented at trial, he believed that appellant knew both the nature and quality of his acts and that they were wrong. Pertinent to Dr. Schwartzman's opinion in this regard was the evidence of appellant's actions at the time of the incident. Appellant's action in pushing the complainant inside the door, locking the door behind him, and threatening the complainant when she screamed demonstrated that he was aware of what he was doing and that it was wrong. In finding appellant sane, the lower court specifically referred to appellant's actions as demonstrating his sanity. We cannot say that the court erred in so viewing the evidence, nor can we say that the evidence of sanity and all the reasonable inferences arising from all the evidence do not support the court's finding that appellant was sane. *See Commonwealth v. Tyson*, supra (lay testimony proved sanity despite opinion of insanity offered by four expert witnesses).

–3–

Appellant next argues that the evidence was insufficient to sustain his conviction of burglary in that the Commonwealth failed to prove beyond a reasonable doubt that he was not licensed or privileged to enter the hallway of the apartment building.

The Crimes Code defines burglary as follows:

A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

18 Pa.C.S. § 3502(a).

Under this section a person who is licensed or permitted to enter the premises is not a burglar even though when he enters he intends to commit a crime. *Commonwealth v. Starkes*, 268 Pa.Super. 108, 113, 407 A.2d 853, 855 (1979); *Commonwealth v. Cost*, 238 Pa.Super. 591, 362 A.2d 1027 (1976); *Commonwealth v. Danzy*, 234 Pa.Super. 633, 340 A.2d 494 (1975); *see* Jarvis, Pennsylvania Crime Code and Criminal Law, Comments to § 3502; Annotation, 93 A.L. R.2d 531 (1964) (consent). The Commonwealth bears the burden of proving that the accused was not licensed or privileged to enter the structure. *Commonwealth v. Starkes, supra; Commonwealth v. Stanton*, 239 Pa.Super. 47, 50, 362 A.2d 355, 357 (1976), *rev'd on other grounds*, 479 Pa. 521, 388 A.2d 1053 (1978); *Commonwealth v. Atkins*, 232 Pa.Super. 206, 210 n. 1, 335 A.2d 375, 377 n. 1 (1975).

In this case there is no question that the area in which the complainant was attacked was not open to the public, and appellant does not raise that question. The only question appellant raises is whether the Commonwealth proved beyond a reasonable doubt that he was not licensed or privileged to enter.

In most cases the Commonwealth will meet its burden of proving that the defendant was not licensed or privileged to enter by having the owner or occupant of the building

testify that he or she did not give the defendant permission to enter. In this case the complainant testified that she lived in one of the apartments, that the other three apartments were occupied by women, that she never saw appellant before, and that she did not give him permission to enter the apartment building. This was evidence that appellant was neither a tenant nor the owner of the building and that his entry was not consented to, at least not by the complainant. Appellant argues, however, that this was not enough, stating that "[i]n a situation like the present, where any of the tenants or the owner or even someone legitmately [sic] acting for the owner or tenants could have given permission or license to enter the common first floor hallway, the testimony by only one tenant that she did not give permission cannot be said to prove beyond a reasonable doubt that the appellant did not have the necessary license or privilege." Appellant's Brief at p. 100.[16]

■■■■ This argument about the possibilities of some person authorizing the entry could be made in almost every burglary case, even one not involving an apartment building, for there is often more than a single person who may give authority to enter. Thus to accept appellant's argument would to some extent entail an acceptance of the argument that any and every possible source of authority to enter must be disproved in every case, which would be to hold that every person capable of authorizing an entry must testify that he did not do so. Our cases have not gone so far, however. Indeed, testimony even by an owner or occupant with respect to a defendant's lack of license or privilege is not always necessary, for the lack of license or privilege may sometimes be inferred from the evidence of the circumstances surrounding the entry. Thus in *Commonwealth v. Her-*

16. Assuming that the evidence is found to be insufficient to support his conviction of burglary, appellant requests that the judgment of sentence imposed for burglary be vacated, and that the sentence imposed on the aggravated assault conviction be vacated and the case be remanded for resentencing, since the burglary conviction may have influenced the sentence for aggravated assault. *See Commonwealth v. Lockhart*, 223 Pa.Super. 60, 296 A.2d 883 (1972).

*man,* 271 Pa.Super. 145, 412 A.2d 617 (1979), this court held the evidence sufficient to prove that the defendant lacked authority to enter an apartment even though neither the tenant nor the owner testified with respect to that issue. In that case the defendant was seen removing a screen from a window to the apartment. In holding the evidence sufficient this court stated:

While it is true that no direct evidence was presented showing that appellant's attempt to enter the apartment was unauthorized, circumstantial evidence established this element of the offense. That evidence showed that at approximately 1:45 a. m. on a holiday weekend, appellant attempted to pry open a secured window screen of an apartment that he neither owned or rented. At the time of the attempt, the lessee of the apartment was not at home, nor were most of the residents of the housing complex. The damage caused to the window screen by the attempt was substantial. Appellant, who had been drinking previously, abandoned the attempt soon after he began it, and when he was approached by Trump and Hanlon, failed to explain his actions. Later, he told Officer Heffernan that he had been home the entire evening, and at some date after the night of the incident appellant threatened Trump not to testify. Finally, as the discussion below demonstrates, the Commonwealth proved that appellant had burglarized Sally Graham's apartment on the same night that he tried to enter Carol Horvath's. The evidence of these actions by appellant sufficiently proved that in removing Carol Horvath's window screen, appellant acted without permission.

271 Pa.Super. at 151–152, 412 A.2d at 620 (footnote omitted)

■ In this case, the evidence that appellant gained entrance only by forcing the complainant through the door, that he entered only to attack her, and that he never stated to her any reason or purpose for the entry but to attack her, when coupled with the complainant's testimony that she had never seen appellant before and that she had not given him

permission to enter, permitted the factfinder to infer that appellant was neither licensed nor privileged to enter the apartment building.[17]

—4—

Appellant's final argument is that the case should be remanded for resentencing under the Mental Health and Mental Retardation Act of 1966 (1966 Act). The 1976 Act repealed the 1966 Act but section 502(a) of the 1976 act provides:

The definition of 'mental disability' in section 102, and sections 401, 402, 403, 404, 405, 406, 407, 408, 409, 410, 411, 412, 413, 416, 418, 419, 420 and 426, act of October 20, 1966 (3rd Sp.Sess., P.L. 96, No. 6), known as the 'Mental Health and Mental Retardation Act of 1966,' are hereby repealed, except in so far as they relate to mental retardation or to persons who are mentally retarded.

50 P.S. § 7502(a).

Appellant contends that since the evidence showed that he was mentally retarded, he should have been considered for confinement for treatment under section 410 of the 1966 Act,[18] and that the case must be remanded for resentencing under that section.

17. Besides arguing that the evidence was sufficient, the Commonwealth also argues that proof that appellant was not licensed or privileged to enter is not necessary to a conviction of burglary under the Crimes Code. In support of this argument the Commonwealth cites *Commonwealth v. Carter*, 482 Pa. 274, 393 A.2d 660 (1978), where the Supreme Court held that criminal trespass was not a lesser included offense of burglary because criminal trespass contains a scienter requirement not found in the definition of burglary. The Commonwealth's reliance on *Carter* is misplaced. Appellant is not arguing that the Commonwealth must prove that he *knew* that he was unlicensed or unprivileged to enter. Instead, he only argues that the Commonwealth must prove that *in fact* he was not licensed or privileged to enter. Proof of his knowledge or scienter is not in issue.

18. Section 410(c) of the 1966 Act provides:

Upon receipt of a report that the defendant is so mentally disabled that it is advisable for his welfare or the protection of the community that he be committed to a facility, the court may so commit him in lieu of sentence for such period, as may be appro-

The problem with appellant's argument is that while the lower court indicated that the 1976 Act applied to the exclusion of the 1966 Act, the court also clearly ruled that it could not commit appellant for treatment under either Act. The court stated at sentencing:

It is a fact that he has a history going back to 1956 of confinement in schools and hospitals for mentally retarded. He has been treated, and I put that word in quotes, in those schools and hospitals. But there has been no measurable improvement in his condition during that period of time. Nothing that I have seen in the psychiatric reports presented to me at trial and after trial leads me to conclude that there is any treatment available that would help Mr. Knight.

I accept the recommendation of the psychiatrist who examined him after conviction to the effect that there are presently no real institutions available to us that will help. To that extent I disagree with the Defender's Office expert.

N.T. Sentencing at 233–34.

The court also concluded:

THE COURT: I have concluded that the Act of 1966, the provisions of that Act with reference to mental retardation do not give me viable alternatives or viable procedures which I may use in this case. I have concluded that the Act of 1976 does not give me viable alternatives or viable procedures. I would therefore conclude the only thing that I can do is commit to prison and that is what I have done.

N.T. Sentencing at 237.

 Thus, even if this court were to rule that the 1966 Act applied to appellant, the ruling would not result in the

priate until further order of the court; but in no event for a period longer than the maximum sentence authorized for the crime of which he was adjudged guilty. If, upon expiration of such period, further care of such person is necessary, the director shall initiate appropriate proceedings under this act as if no crime had been involved.

50 P.S. § 4410(c) (repealed 1976).

remand that appellant requests since the lower court has already considered and rejected confinement for treatment under the 1966 Act. Accordingly, since we need not do so, we shall not decide the issue of which Act applies.

Affirmed.