550 A.2d 241

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Charlotte Joann WITMER, Appellee.**

Superior Court of Pennsylvania.

Submitted Aug. 15, 1988.

Filed Nov. 10, 1988.

Amy L. Hallenbeck, Assistant District Attorney, Montoursville, for Com., appellant.

William J. Miele, Williamsport, for appellee.

Before TAMILIA, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal by the Commonwealth from the order of the Court of Common Pleas of Lycoming County finding the appellee (Charlotte Joann Witmer) incompetent to stand trial and dismissing the charge of retail theft filed against her. We reverse.

The record indicates that on January 2, 1986, the appellee was arrested and charged with unlawfully taking possession of retail merchandise[1] from K–Mart totalling $61.29 with the intention of converting it to her own use without paying the owner for the value thereof in violation of 18 Pa.C.S. § 3929(a)(1).

A preliminary hearing was held and resulted in the appellee being bound over for court. Formal arraignment was

---

1. The items allegedly taken consisted of: three mugs, one bottle of skin care lotion, seven cassette tapes (audio), one pair of leggins and a child's two-piece clothing outfit.

waived by counsel. Next, of relevance here, is an indication in the record that a rule was made absolute granting the appellee's Motion for Psychiatric Examination to determine her competency to stand trial and sanity.

In furtherance thereof, a hearing was conducted in which the sole witness to appear and testify was Doctor Kastas P. Kratsa, the Director of the Lycoming/Clinton County Community Mental Health Center ("Health Center"). His credentials as an expert were not challenged by the Commonwealth.

Dr. Kratsa specializes in psychiatry and had known the appellee for over three years, beginning in 1984. She was an outpatient at the Health Center and was having her overall treatment supervised by the doctor.

His assessment of the patient/appellee, in regard to her competency to stand trial, was that she "demonstrated a fair degree of understanding" of the charge brought against her. However, he believed that she was not capable of assisting her counsel in preparing the case. The court below agreed, and, in an order dated February 5, 1988, found the appellee to be unable to aid in her defense, as well as insane at the time of the commission of the crime. Accordingly, under the *M'Naghten Rule,*[2] the court held the appellee to be incompetent to stand trial. Further, because there was no substantial probability that the appellee would obtain the capacity to stand trial in the foreseeable future, she was discharged and the charges against her were dismissed. This Commonwealth appeal followed.

It is the contention of the Commonwealth that clear and convincing evidence was not presented to find the appellee incompetent to stand trial, nor was a dismissal of the charge warranted since there was no substantial probability that the appellee would not regain her competency in the foreseeable future to stand trial.

As to the initial assertion, it is well-settled in this jurisdiction that the defendant has the burden of proving mental

2. *See Commonwealth v. Moon,* 383 Pa. 18, 117 A.2d 96 (1955).

incompetency to stand trial by clear and convincing evidence, and the decision to determine the same rests with the trial judge whose determination will not be reversed unless it is unsupported by the record. *See Commonwealth v. Knight,* 276 Pa.Super. 348, 419 A.2d 492 (1980).

■ The test to be utilized in ascertaining the legal sufficiency of one's mental capacity to stand trial is not the *M'Naghten* "right or wrong" test, but rather it is one's ability to comprehend his position as one accused of a crime and to cooperate with his counsel in making a rational defense. *Commonwealth v. Kennedy,* 451 Pa. 483, 487–88, 305 A.2d 890, 892–93 (1973).

■ Thus, a defendant's history of mental illness does not necessarily preclude his or her ability to stand trial because the test is not the nature of the mental illness, but the defendant's comprehension of the charges filed and the ability to cooperate in preparing a defense. *Commonwealth v. Tyson,* 485 Pa. 344, 402 A.2d 995 (1979).

■ Our scrutiny of the record, against the back-drop of the applicable law, refutes the appellee's claim, by clear and convincing evidence, that she was not able to comprehend her position as one accused of a crime or that she was incapable to assist her counsel in presenting a rational defense. The basis for such a finding is garnered from the testimony of the appellee's psychiatrist.

As remarked earlier in this opinion, Dr. Kratsa supervised the appellee's outpatient treatment at the Health Center for some three years. He also conducted the "mental status examination" on the appellee in conjunction with other clinicians on two separate occasions. The one test denominated "a dull-normal range" of intelligence for the appellee and the second determined that she had a "cerebral vascular" accident, which in lay terms is a stroke. This resulted, according to the doctor, in "left-side cerebral damage, particularly involving the frontal areas which reflect perceptual-cognitive deficits". And, this type of cerebral injury, in the opinion of the psychiatrist, leads one to have difficulty

in understanding, perceiving and being able to integrate information in terms of performing an act or understanding a situation. This conclusion was corroborated by the doctor's interview with the appellee and was consistent with the long-term "longitudinal" experience he had with the appellee.

Further, the doctor opined that the appellee had an inability to "cognitively understand", a situation which would and had deteriorated over the years.

As for the "legal" ramifications related to her actions, the doctor spoke to the appellee and testified that she understood she did something wrong and that she was being represented by counsel. In fact, the doctor, in response to the court's questioning as to whether he felt the appellee understood the nature of the proceedings against her, stated:

I think she can understand the nature of the proceedings ... on the basis of my conversation with her, she was able to demonstrate a fair degree of understanding, she was also well prepared, and also under(stood) that she (was) in some serious difficulty, she had been charged with a crime, she under(stood) that.

However, the doctor did not believe that the appellee had the capacity to participate in the preparation of her defense. Yet, the doctor gave an accounting whereby he and the appellee discussed what occurred on the day in question. Albeit the doctor described the exchange as an "extremely laborious task" for the appellee in which she was fearful and distraught, there is no disputing that the substance of the conversation enlightened the doctor as to the events surrounding the charges filed. As he told it, in relevant part:

... (the) incident ... involved a purchase of an article that (the appellee) was interested in purchasing, ... I think it had something to do with needlepoint or stitching, ... it was an article that had significance to her. She state(d) that when she ... chose the article, it wasn't priced, it did not have a sticker on it. In an attempt to

speed things along, ... she ... state(d) ... she wanted to be able to purchase the article without having a delay at the cash register. She either took a sticker off of another item and placed it, thinking that the two items were congruent, and in doing so, she recall(ed) blacking out, she knows that she was very anxious and as she approached the article she felt flushed, confused, and dazed, and in feeling that way, she wanted to expedite matters, and took matters into her own hands. *She realize(d), she did explain to me, it wasn't a proper thing to do, ...* the next time she ha(d) any( ) recollection ... of what happened (s)he was in the clutches of a security guard and she was being accused of shoplifting. (Emphasis added)

To the inquiry by the attorney for the Commonwealth, "if the appellee could discuss the events of what occurred to the doctor, which the doctor labelled 'meaningful', why could she not do the same thing with her attorney", the doctor candidly responded: "I haven't had the opportunity to develop that information. *I don't know."* (Emphasis added)

At another stage of the hearing, the doctor characterized the appellee's accounting of the circumstances surrounding the purported theft as not that of the commission of a crime. On the contrary, she was reconstructing the purchase of an article, and that she tried to put a sticker with a smaller price on an item that was of greater value. In particular, he stated:

She was describing everything that she could remember of a purchase, not a crime, and then there was the black out with the alarming realization that she was being accused of shoplifting which occurred at an interval beyond that point ... *For that reason, I don't think she is capable beyond that point of assisting counsel.* (Emphasis added)

Thus, even the doctor who treated the appellee for over three years and conducted the competency evaluation paints

a picture of an individual who remembers everything that transpired up to her alleged "black-out".

We feel, as did the attorney for the Commonwealth, that the appellee can "communicate to her counsel that she had a black out", and this "may be a defense for her".

It would appear to this Court that the doctor was allowing his judgment to be clouded by his belief that, "the impact of any trial ... on (the appellee,) from the standpoint of her psychiactric (sic) status ... and her cerebral vascular problems that a stress of the trial (would cause,) would not be in her best interests".

Even though recounting the events of the alleged theft may be "very traumatic" for the appellee, she had demonstrated, in the words of the doctor, a "fair degree of understanding" that she had been charged with a crime. Also, her recollection of the events, as paraphrased from the doctor's accounting of his conversation with the appellee, was concise and left little doubt that she was "cognitive" of what transpired. The fact that it may be difficult and painful for her to relate what transpired to counsel and the court should not excuse her from having to defend against the charge made. This much can be gleaned from *Commonwealth v. Hazur*, 372 Pa.Super. 306, 539 A.2d 451 (1988).

In *Hazur*, this Court reversed a finding of incompetence and discharge of the crimes lodged against the defendant. In doing so, we wrote:

When questioned as to the appellee's ability to assist with her defense, Dr. Fiume testified that appellee understood the charges lodged against her and was cooperating by assisting her attorney. Moreover, the trial court also questioned appellee as to her comprehension of the charges and the procedures that she would go through should her case proceed to trial. Appellee answered all of the judge's questions affirmatively.

While we sympathize with the trauma that befalls appellee as a result of her arrest and charge with the crime of driving under the influence, her mental illness

does not rise to the level contemplated by section 7403(a) of the Mental Health Procedures Act. The legal qualifications of incompetency when determining whether a defendant is able to stand trial are not synonymous with those in medicine. Dr. Fiume's testimony was replete with his medical observations of appellee's inability to function emotionally during a criminal proceeding but when questioned as to appellee's comprehension of the charges and ability to cooperate in her defense—the legal test for incompetency—Dr. Fiume acknowledged that appellee was capable of functioning in this manner. Appellee did not demonstrate by clear and convincing evidence her inability to understand the nature and object of the proceedings against her nor an unwillingness or inability to assist with her defense. What appellee did present was a picture of an emotionally distressed but socially functioning defendant. Thus, we hold that the record does not support the lower court's finding that appellee was not competent to stand trial.

372 Pa.Super. at 311, 539 A.2d at 453–43.

As in *Hazur*, we find that the "fear" and "distraught" feelings brought about with the knowledge of having to appear in court are not synonymous with "clear and convincing" evidence of incompetency to stand trial. The apprehension and inhibition one may experience in contemplation of trial are not reactions which the law has equated with incompetence. *Id.* These are emotional and psychological responses the average individual has in having to appear in a trial charged with the commission of an offense.

Therefore, because we find the appellee competent to answer in court the charge brought against her, we are in disagreement with the trial court's dismissal of the retail theft offense. And, as in *Hazur*, we shall reinstate the retail theft charge and remand for a trial.[3]

---

3. As to the trial court's conclusion that the appellee was insane at the time the crime was committed, we note, first, that the hearing below elicited testimony limited to the ascertainment of the appellee's competency to stand trial, and not her sanity at the time of the alleged offense. Different standards are applicable to both. *See Hazur,*

454

Order reversed, retail theft charge is reinstated and the case is remanded for trial. Jurisdiction is relinquished.

supra. Secondly, our review of the record does not evidence support for the conclusion that the appellee was insane, other than the bald assertion by the psychiatrist, *unsubstantiated by any medical evidence,* that such a finding was properly drawn from the facts presented at the hearing held below.