J-S55044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KAREEM SANDERS | |
| Appellant | No. 866 EDA 2014 |

Appeal from the Judgment of Sentence October 29, 2013
In the Court of Common Pleas of Carbon County
Criminal Division at No(s): CP-13-CR-0000389-2012

BEFORE:  BOWES, J., SHOGAN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED MARCH 10, 2015**

Kareem Sanders timely appeals from the judgment of sentence imposed on October 29, 2013.[1]  A jury found Sanders guilty of burglary, criminal trespass, and theft by unlawful taking.[2]  The trial court sentenced Sanders to a term of imprisonment of three to six years.  In this appeal, Sanders raises six questions, which may be distilled to two issues, namely, challenges to the weight and sufficiency of the evidence with respect to his

_____

[1] Sanders purports to appeal from the order denying his post-sentence motion.  We have corrected the caption to reflect that Sanders's appeal properly lies from the judgment of sentence entered on October 29, 2013, not the order denying his post-sentence motion.  *See Commonwealth v. Mullins*, 905 A.2d 1009, 1014 n.2 (Pa. Super. 2006), *appeal denied*, 937 A.2d 444 (Pa. 2007).

[2] 18 Pa.C.S. §§ 3502(a), 3503(a)(1)(i), and 3921(a).

convictions for burglary and criminal trespass.[3]  Based upon the following, we affirm.

The trial court has aptly stated the factual and procedural history of this case, and we need not repeat it here.  **See** Trial Court Opinion, 2/3/2014, at 1–6.

We first address Sanders's challenge to the weight of the evidence, applying the following standard of review:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court... It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that

---

[3] Sanders timely complied with the trial court's order to file a Rule 1925(b) statement of errors complained of on appeal, and preserved his weight claim in a timely-filed post-sentence motion.  **See** Pa.R.A.P. 1925(b); Pa.R.Crim.P. 607(A)(3).

the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations omitted) (italics in original).

Here, the trial court rejected Sanders's weight claim, reasoning:

[Sanders] presents a single argument for why both his burglary and criminal trespass convictions were against the weight of the evidence. He argues that the verdict was against the weight of the evidence for these two crimes because he claims the evidence overwhelmingly supported the conclusion that he had license or privilege to enter Mr. Rehrig's home.

A defendant is not guilty of burglary if, at the time of the crime, the defendant was licensed or privileged to enter the burglarized home. 18 Pa.C.S.A. § 3502(b)(3) [*See* former Section 3502(a)]. Similarly, a defendant is not guilty of criminal trespass if he or she "reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain." 18 Pa.C.S.A. § 3503(c)(3). Unlike burglary, criminal trespass has a scienter requirement for this defense that would allow for a defendant to be acquitted if he reasonably believed, albeit falsely, that he had license to enter. *Commonwealth v. Carter*, 393 A.2d 660, 661 (Pa. 1978). "In most cases the Commonwealth will meet its burden of proving that the defendant was not licensed or privileged to enter by having the owner or occupant of the building testify that he or she did not give the defendant permission to enter." *Commonwealth v. Knight*, 419 A.2d 492, 500 (Pa. Super. 1980).

[Sanders] argues that he had license or privilege to enter Mr. Rehrig's home, or reasonably believed so, because he entered the home with Co-Defendant who, in the past, had a license or privilege to enter while visiting his mother. However, both Mr. Rehrig and Co-Defendant testified that Co-Defendant did not have permission to enter the home. [Sanders] claims that their testimony should be given little to no weight because the record established that Co-Defendant did have a license or privilege to enter Mr. Rehrig's home. Contrary to [Sander's] claim, the

- 3 -

testimony of Mr. Rehrig and Co-Defendant is overwhelmingly supported by the record.

According to the Superior Court, a defendant is licensed or privileged to enter "if he may naturally be expected to be on the premises often and in the natural course of his duties or habits" or, more simply, a defendant lacks privilege "if he would not reasonably be expected to be present." ***Commonwealth v. Corbin***, 446 A.2d 308, 311 (Pa.Super. 1982). In ***Corbin***, a defendant was convicted of burglary even though the burglary occurred in an office building the defendant had access to as a janitor. ***Id.*** at 310. On appeal, the Superior Court affirmed the defendant's conviction because, contrary to the defendant's argument, he did not have license or privilege to enter. ***Id.*** at 311. The Superior Court held that the defendant's license or privilege to enter the office building extended only to his work duties between 5:00 P.M. and 9:00 P.M. ***Id.*** It found that defendant exceeded that license or privilege when he entered the office building at 10:00 P.M. or 11:00 P.M. for non-work purposes. ***Id.***

Like in ***Corbin***, the evidence established that when Co-Defendant entered Mr. Rehrig's home at 5:00 A.M. on August 4, 2011, he exceeded his license or privilege. Mr. Rehrig testified that Co-Defendant was only allowed in his home to visit his mother. As of August 4, 2011, Co-Defendant's mother no longer lived with Mr. Rehrig. In fact, Co-Defendant's mother had not lived with Mr. Rehrig since the summer of 2010 - a year before the incident.[6] Based on this evidence, Co-Defendant exceeded his privilege to enter Mr. Rehrig's home because his mother had moved out a year earlier. Thus, this evidence supported the testimony of Mr. Rehrig and Co-Defendant that Co-Defendant did not have a license or privilege to enter the home on August 4, 2011.

_____

[6] Mr. Rehrig did testify that Co-Defendant's mother lived with him only a month or two before the incident. Mr. Rehrig was clearly mistaken because Co-Defendant's mother died in October 2010.

_____

The circumstances surrounding Defendant's and Co-Defendant's entry into Mr. Rehrig's home also supported the testimony of Mr.

Rehrig and Co-Defendant. Co-Defendant testified that he and Defendant went to Mr. Rehrig's home to steal his television. They entered Mr. Rehrig's home at 5:00 A.M. and the home was mostly dark when they entered. Upon entering, [Sanders] placed a pillow over Ms. Williams['] face, forced her to sit on a couch, and demanded money while he pretended to have a gun. While he was doing this, Co-Defendant unplugged the television and removed it from the home. [Sanders] then took $500 from Mr. Rehrig before he left. This conduct of entering a dark home in the early morning and proceeding to immediately confront and steal from the occupants clearly corroborated Co-Defendant's testimony that the Co-Defendant and Defendant did not have a license or privilege to enter the home.

Consequently, it does not shock our conscience that the jury relied on the direct testimony of Co-Defendant and Mr. Rehrig[7] to find that Co-Defendant, and thus [Sanders], did not have license or privilege to enter Mr. Rehrig's home. The record provided substantial support for their testimony. [Sanders's] post-sentence motion with regard to weight of the evidence is denied.[8]

_____

[7] [Sanders] also argues that Mr. Rehrig's testimony that Co-Defendant did not have permission to enter his home deserves little weight because his testimony suggested uncertainty. Mr. Rehrig's testimony on this question was as follows:

Q: No, the day it happened, August 4th, did you give [Co- Defendant] permission to be in your house?

A: To my knowledge, he wasn't there. No, I didn't give him no permission. He wasn't there, to my knowledge, until I was told.

Despite using a double negative, Mr. Rehrig's testimony was clear that Co-Defendant did not have license or privilege to enter his home. Mr. Rehrig was only uncertain as to whether Co-Defendant actually entered his home because he slept through the incident.

[8] [Sanders] also argues that his burglary conviction was against the weight of the evidence because Co-

> Defendant's testimony was contradictory on the reason why he and Defendant went to Mr. Rehrig's home. He claims this contradiction makes the verdict against the weight of the evidence for his burglary conviction on the element of intent.
>
> Co-Defendant first testified that he and [Sanders] went to Mr. Rehrig's home to confront Mr. Rehrig. However, after the Commonwealth showed Co-Defendant his statement to Officer Arner – where he told Officer Arner they went to Mr. Rehrig's home to steal the television – he changed his testimony to reflect that in the statement. He testified on cross-examination that the statement he gave to police was accurate and that he misspoke in his earlier testimony. Thus, based on this explanation, and [Sanders's] conduct when he entered the home, it does not shock our conscience that the jury relied on Co-Defendant's corrected testimony to find intent.

_____

Trial Court Opinion, 2/3/2014, at 7–11 (record citations omitted).

Based on our review of the evidence, we see no abuse of discretion in the trial court's decision to deny Sanders relief on his weight claim.

Nor do we find merit in Sanders's sufficiency challenge to his convictions for burglary and criminal trespass. Sanders argues that, on August 4, 2011, he had license or permission to enter the residence of Robert Rehrig. Specifically, Sanders argues that his co-defendant had permission to enter the Rehrig residence, and that he was the guest of his co-defendant. In this regard, Sanders relies on the fact that his co-defendant had previously visited his mother at the Rehrig residence, when she had lived there for a time. Sanders also contends the evidence was

insufficient to show that he had formed an intent to commit a crime contemporaneous with his entry into the residence.

Our standard of review of a sufficiency claim is well settled:

In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. We may not weight the evidence and substitute our judgment for the fact-finder. To sustain a conviction, however, the facts and circumstances which the Commonwealth must prove must be such that every essential element of the crime is established beyond a reasonable doubt.

Lastly, the finder of fact may believe all, some or none of a witness's testimony. *Commonwealth v. Sloan*, 67 A.3d 808, 814 (Pa. Super. 2013) (citations omitted).

Regarding the crime of burglary, at the time of the commission of the offense, Section 3502 of the Crimes Code provided, in relevant part:

**(a)** **Offense defined.—**A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless hthe premises are at the time open to the public or the actor is licensed or privileged to enter.

18 Pa.C.S. § 3502(a). Furthermore, regarding the crime of criminal trespass, Section 3503 provides, in pertinent part:

**(a)** **Buildings and occupied structures.—**

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

> (i)     enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof[.]

****

**(c)  Defenses.—**It is a defense to prosecution under this section that:

> (3)  the actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain.

18 Pa.C.S. § 3503(a)(1)(i), (c)(3).

Here, the Commonwealth presented the testimony of the owner of the residence, Rehrig, who testified he did not give Sanders's co-defendant permission to be inside his house on August 4, 2011, and he never knew Sanders.  The Commonwealth also presented the testimony of Sanders's co-defendant, who stated that he did not have permission to enter the residence.  In addition, from the circumstances of the case, the jury could infer that Sanders and his co-defendant lacked permission from Tammy Williams, another occupant of the residence, to enter the home.  As already stated, the jury heard Sanders's co-defendant's testimony that he did not have permission to enter the residence.  In addition, the jury also heard that when Sanders and his co-defendant entered into the unlocked home at 5:00 A.M., which was mostly dark, Sanders immediately confronted Williams, who was descending the stairs, put a pillow over her face, forced her to the couch, demanded money, and pretended to have a gun.  Accordingly, based upon the above evidence, the Commonwealth established that neither

Sanders's co-defendant nor Sanders had permission to enter the Rehrig residence. *See* 18 Pa.C.S. §§ 3502(a); 3503(a)(1)(i).

Furthermore, the circumstances of this case, including the time of entry and the actions of Sanders upon seeing Williams on the stairs, establish that Sanders did not reasonably believe he had license to enter the residence with his co-defendant. *See* 18 Pa.C.S. § 3503(c)(3), *supra*.

Finally, with regard to the burglary element of intent, Sanders's co-defendant testified that Sanders asked him to help him steal the television from Rehrig. Moreover, the circumstances of this case permitted the jury to infer Sanders's intent to commit the crime of theft contemporaneous with Sanders's entry into the residence. Here, the jury heard that Sanders and his co-defendant entered the residence in the early morning, and that while Sanders confronted Williams and demanded money, Sanders's co-defendant removed the television from the residence. The two men met up together later, and Sanders gave his co-defendant $100.00 of the $500.00 he had taken from Rehrig, who was asleep. Contrary to the argument of Sanders, on this evidence, the Commonwealth established the element of intent. *See* 18 Pa.C.S. § 3502(a).

Therefore, we reject Sanders's sufficiency claim, as there was ample evidence for the jury to conclude that Sanders was guilty of burglary and criminal trespass.

Accordingly, we affirm.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/10/2015</u>