J-S30031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILMER ORTEGA-FRANCO | : | |
| | : | |
| Appellant | : | No. 871 EDA 2025 |

Appeal from the Judgment of Sentence Entered March 6, 2025
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0002512-2024

BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED DECEMBER 31, 2025**

Appellant, Wilmer Ortega-Franco[1], appeals from the judgment of sentence imposed by the Court of Common Pleas of Lehigh County after a trial court found him guilty of criminal trespass, burglary, and stalking.[2] Appellant challenges the sufficiency of evidence for criminal trespass and burglary, the supposed failure to merge his sentences for burglary and stalking, and the discretionary aspects of his sentence. Upon review, we affirm.

The trial court summarized the factual and procedural history of this case as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that Appellant goes by various names which are mentioned throughout the record, such as "Benito", "Ortega Franco", and "Wil".

[2] 18 Pa.C.S. §§ 3503(a)(1)(i), 3502(a)(4), and 2709.1(a)(1), respectively.

[Blakely McHugh was a morning reporter for WFMZ starting in December 2022. She resided at Cityplace, an apartment complex in Allentown, Pennsylvania. Cityplace is a secure building with three locked exterior doors. Visitors there must use the intercom at only two of the doors to contact residents for entry, which takes a visitor's photo. Residents can allow or deny entry, and denied guests can leave an electronic message.]

On April 26, 2024, [] McHugh went to California [for] personal/family matters and [stayed] until the first week of June 2024. On April 27, 2024, at 3:38 [p.m.], while [] in California, [McHugh] received a [phone request] from an individual, later identified as [Appellant], wanting to gain access to the building. Not knowing the individual, [she denied] access. At 3:41 [p.m.], [] McHugh then received an electronic message stating, "be a good friend." Then, at 3:42 [p.m.], [] the same [person] sent another message [with] the email address "benitoortega30@icloud.com." Later [] at 5:42 [p.m.], [] McHugh received another [access request]. Once again, [] McHugh denied access []. Upon receiving this second request, [] McHugh grew concerned and contacted [Cityplace] security [who said they would investigate].

Thereafter, on the morning of April 29, 2024, [] McHugh received an email from David Herrington, WFMZ's IT technician and digital media developer, [about concerning messages sent to WFMZ's website/app]. [WFMZ] had received, *inter alia*, a photograph of [] McHugh's apartment [unit] door [with] a pig statue [, which Herrington recognized from visiting her apartment, and which demonstrated Appellant entered the apartment building]. The comment associated with the post [said,] "quiero concerla por favooooorrrrrr, I'm going to the army." [P]osts submitted to WFMZ between April 1, 2024[,] and April 29, 2024[,] had listed "Wil" or "Wilmer" as the [person's name] who uploaded the images, along with the email address francowilmer6@gmail.com.

However, on April 30, 2024, an uploaded image of a text exchange with "Jacky," which was consistent with the other screenshots of text conversations with "Jacky," listed ubereats1330@gmail.com as the email address and "Mr. Foodie" as the person who uploaded the image. Many of the uploaded images included contact [details: 424 E. Mosser Street; a last name of "Ortega;" a phone number of 484-408-2477; and [image] titles like "Playita Little Bitch" or "I want my BM."] Based on these concerning communications

received by WFMZ, Herrington notified the [n]ews [d]irector, who [] contacted the police.

Later that day at 2:57 [p.m.], but before WFMZ [could] file a police report, [] McHugh [got another entry request for her building from the same person]. [] McHugh rejected the call and notified [Allentown police]. Officer Pablo Vazquez [] was dispatched to [Cityplace], [] for an unwanted person. He was provided [a suspect description] (blue floral shirt, jeans, and medallion necklace) [from Cityplace's intercom], as well as the name of "Wilmer" by [] McHugh.

Officer Vazquez, along with Officer Keegan Connelly, [searched the apartment but found no one matching] the description. However, when Officers Vazquez and Connelly responded to a possible disturbance two [] blocks away at Sports and Social Allentown, [] Officer Vazquez encountered the suspect alone in a booth [matching] the description provided[.] Officer Vazquez approached him and asked him for his identification. The suspect was identified through his identification [card] [with a residence] at 242 E. Mosser Street, Allentown. Officer Vazquez advised [Appellant] not to return to the apartment complex and that he would be arrested if he returned. [Appellant] indicated his understanding and assured Officer Vazquez that he would not return to the apartment building.

Shortly thereafter, at 3:58 [p.m.], [] McHugh received a Facebook message saying, "You got me on [sic] trouble." Upon checking her Facebook messages, [] McHugh saw that she had received a message from "Wilmer Ortega Franco" earlier that day at 8:24 [a.m.] Specifically, Wilmer Ortega Franco had sent her a photograph of her front door with the pig statue by the door jamb; the same concerning photograph that WFMZ had received. In fact, he had added music to the photograph and [] turned it into a video. Under the photograph, he posted, "I want [sic] show u the real life, we don't need a million." [At] 9:32 [a.m., Wilmer Ortega Franco posted], "We are living in a simulation ... I'm the emulator ... And Neo want a new Kingdom." [] McHugh also noted that on April 26, 2024[,] at 1:58 [a.m.], Wilmer Ortega Franco posted[,] "The most beautiful journalist[,]" and then at 2:02 [p.m.], "Wait for me, just 1 more month."

In addition, under the name "Wil" and the handle "_theyhatethisnigga," [] McHugh received [many alarming Instagram] comments and [blocked this account]. [] McHugh

- 3 -

believes that [Appellant] then made a new Instagram account under the handle "psycObvnny" with the name of "Benito Ortega" [] to continue to view her posts and comment. Overall, all [] the communications [] made [] McHugh very fearful and caused her emotional distress[; she] had nightmares [] in California[,] and [] felt very unsafe.

In addition, on April 29, 2024, at approximately 3:00 [p.m.], Officer Jeramy DeVaul [at] the Allentown Police Department [learned from] Sergeant Joshua Brubaker [] that WFMZ [wanted to file a police report on McHugh's behalf]. Sergeant Brubaker [said] McHugh would [call to] make the report. At approximately 3:40 [p.m.], Officer DeVaul [spoke to McHugh, who sounded very concerned and afraid.] [That same day, c]harges were approved at 8:30 [p.m. Appellant] was arrested on April 30, 2024[,] and released on bail.

On May 1, 2024, [Appellant] entered the [] Allentown Police Department [headquarters regarding his involvement in a car accident]. When [Appellant] identified himself as Wilmer Franco, Officer DeVaul recognized his name [and got permission to interview him about his April 30th arrest, advising Appellant he could refuse]. [Appellant agreed and was taken to an interview room]. The conversation was recorded[,] and [Appellant] was again advised that he was free to leave at any time. [Appellant gave his email address (francowilmer6@gmail.com), his home address (242 East Mosser Street), phone number (484-408-2477), and Instagram account username (_theyhatethisnigga).] [Appellant] admitted to sending [] McHugh [] "The most beautiful journalist[" Facebook message[.]

However, [Appellant] denied sending any other Facebook messages to [McHugh] and indicated that his laptop had been stolen and [his identity was being fraudulently used]. [Appellant] also admitted that the text exchanges depicted in many of the screenshots uploaded to WFMZ were between him and a friend named Jacky, he denied having uploaded them to WFMZ. Similarly, [Appellant] admitted [to] seeing the photograph of [] McHugh's apartment door with the pig statue in his iCloud account but denied sending it to anyone. When [Appellant] was shown the photographs taken by [Cityplace's] intercom system, [Appellant] stated, "It looks like me." Additionally, [Appellant] indicated that he never got into the building, although he would have liked to. Also, [Appellant] admitted to Officer DeVaul that

_theyhatethisnigga is his username for Instagram and that psycObvnny was a newer Instagram account that he had created.

[On January 8, 2025, the court presided over a nonjury trial.]

[Appellant] testified at trial that his laptop had been stolen and that his identity had been fraudulently used. While [Appellant] admitted to commenting on [] McHugh's stories on Instagram and posting the first post on Facebook, [Appellant] denied any other electronic communication with [] McHugh. Indeed, [Appellant] indicated that he watched the WFMZ morning show, but denied sending any of the photographs to their website/app. [Appellant] also stated that prior to his arrest[,] he did not know where [] McHugh lived and that he had never been to her apartment despite photographic evidence undermining this assertion. [Appellant] also contradicted Officer Vazquez's testimony and testified that Officer Vazquez approached him in Sports and Social Allentown on April 29, 2024[, regarding]a stolen bicycle, [and] not [based on] an unwanted person [report] at [Cityplace. The trial] court found [Appellant's] testimony to be contrary to the evidence and not credible.

Trial Court Opinion, 4/10/25, at 4-11 (citations omitted, reformatted, and brackets added).

The trial court found Appellant guilty of criminal trespass, burglary, and stalking. *See* N.T. Trial, 1/8/25, at 132. Sentencing was deferred for the preparation of a presentence investigation report (PSI) and mental health evaluation. *See id.* at 133. On March 6, 2025, the trial court presided over the sentencing hearing, during which it stated it had thoroughly reviewed the PSI, McHugh's victim impact statement, the arguments of defense counsel and the Commonwealth, the circumstances of the case, and all relevant factors. *See* N.T. Sentencing Hearing, 3/6/25, at 8-10. Thereafter, the trial court sentenced Appellant to seven months to five years' imprisonment for burglary consecutively with a separate imprisonment term of twenty months

to five years for stalking. ***See id.*** at 11. The aggregate imprisonment term was thus twenty-seven months to ten years. ***See id.*** The criminal trespass count merged with burglary. ***See id.*** at 10-11.[3]

On March 11, 2025, Appellant filed a post-sentence motion, which the trial court denied. ***See*** Post-Sentence Motion, 3/11/25; Order (Denying Post-Sentence Motion), 3/20/25. Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), and the trial court filed

_____

[3] The imposed sentence for burglary was in the aggravated range recommended by the Sentencing Guidelines, and the stalking term was above the aggravated range recommended by the guidelines.

For burglary, the recommended standard range was one to four months' imprisonment, with an aggravated range of up to seven months' imprisonment. ***See*** N.T. Sentencing Hearing, 3/6/25, at 3 (noting Appellant's prior record score is 0 and the offense gravity score of 8); ***see also*** 204 Pa. Code. § 303a.9 (8th ed.) (setting the offense gravity score of 8 for burglary with no person present under Section 3502(a)(4)); 204 Pa. Code § 303a.14 (8th ed.) (applicable sentencing matrix).

For stalking, the recommended standard range was twenty-four months' probation, with an aggravated range of up to thirty months' probation. ***See*** N.T. Sentencing Hearing, 3/6/25, at 3 (noting Appellant's prior record score is 0 and the offense gravity score of 7); ***see also*** 204 Pa. Code. § 303a.3(a)(4) (8th ed.) (general omnibus list applies for offense not listed in Section 303a.9) (only setting forth the offense gravity scores for recidivist counts of stalking under Section 2709.1(a)(1)); 204 Pa. Code § 303a.11 (omnibus offense gravity score table setting an offense gravity score of 7 for misdemeanors of the first degree; 204 Pa. Code § 303a.11) (8th ed.) (applicable sentencing matrix).

an opinion. *See* Notice of Appeal, 3/31/25; Rule 1925(b) Order, 4/1/25; Rule 1925(b) Statement, 4/7/25; Trial Court Opinion, 4/10/25.

Appellant presents the following questions for our review:

I. Whether the evidence was sufficient to establish beyond a reasonable doubt that [Appellant] was not licensed or privileged to enter the victim's apartment building for the offenses of burglary and criminal trespass?

II. Whether the evidence was sufficient to establish beyond a reasonable doubt that [Appellant] entered the victim's apartment building with the intent to commit a crime therein for the offense of burglary?

III. Whether 18 [Pa.C.S. § 3502(d)] required the [t]rial [c]ourt's sentence for stalking to merge with its sentence for burglary?

IV. Whether the [t]rial [c]ourt abused its discretion in its aggregate sentence for [Appellant] when the sentencing factors here were not compellingly different to justify an aggravated range sentence for burglary and a sentence outside of the [range recommended by the] Pennsylvania Sentencing Guidelines for stalking?

Appellant's Brief at 4-5 (answers of the trial court and suggested answers omitted).

In his first issue and second issues, Appellant challenges the sufficiency of evidence sustaining his burglary and criminal trespass convictions. *See* Appellant's Brief at 14-18. We begin by noting our standard of review for sufficiency of evidence:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In

addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Gary*, 332 A.3d 118, 123–24 (Pa. Super. 2025) (quoting *Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa. Super. 2017) (*en banc*) (citation omitted)).

In his first issue, Appellant argues that the evidence was insufficient to convict him of burglary and criminal trespass because the Commonwealth failed to prove, beyond a reasonable doubt, that he was not licensed or privileged to enter the victim's apartment building. *See* Appellant's Brief at 14-16. In doing so, he refers us to statutory defenses, which required the Commonwealth to prove that he was not privileged or licensed to enter the victim's apartment building. *See id.* at 15 (citing 18 Pa.C.S. §§ 3502(b)(3) and 3503(c)(3)); *see also Commonwealth v. Hayes*, 460 A.2d 791, 795 (Pa. Super. 1983) ("it is the Commonwealth's burden to prove beyond a reasonable doubt that the defendant was not licensed or privileged to enter the building"). Appellant also cites *Commonwealth v. Knight*, stating that our Court has required that, "in circumstances where multiple tenants have

access, that a defendant's lack of license or privilege be inferred beyond a reasonable doubt based on the circumstances surrounding a defendant's entry." *See id.* (citing *Commonwealth v. Knight*, 419 A.2d 492, 500 (Pa. Super. 1980)).

Applying *Knight*, Appellant asserts that the Commonwealth's evidence did not support an inference for a lack of license or privilege. *See id.* He argues that the Cityplace building had a shared common space for guests, residents, and employees. *See id.* At the same time, the Commonwealth only had the victim testify to prove that he lacked a license or privilege to enter. He thus argues that the only evidence that established his presence at the apartment building was a photograph of him at one of the building's entrances. *See id.* Therefore, he concludes that the trial court erred by speculating that he lacked a license or privilege to enter the apartment building. *See id.* We disagree.

At trial, the victim testified that Cityplace's entrance was not open to the public. *See* N.T. Trial, 1/8/25, at 15. Guests there must call residents via the intercom to have the residents unlock the entrance. *See id.* at 16. The victim's apartment was on the seventh floor and only accessible by elevator. *See id.* at 15. Appellant sent a message to the victim's Facebook account with a photograph of her individual apartment's front door next to a pig statue. *See id.* at 25; Commonwealth's Trial Exhibit C-30 (4/29/24 Facebook

Message). She testified that she did not know anyone in the building with that same pig statue. *See* N.T. Trial, 1/8/25, at 25-26.

Appellant's testimony contradicted that he sent Facebook messages to the victim of a photograph of her front door. *See* N.T. Trial, 1/8/25, at 119 (stating he only sent one Facebook message); Commonwealth's Trial Exhibit C-26 (4/26/24 Facebook Message). However, the trial court found Appellant not credible and decided based on the totality of circumstances and evidence produced by the Commonwealth that he was not privileged or licensed to enter Cityplace. *See* Trial Court Opinion, 4/10/25, at 11.[4] Following our review of the record and viewing it in the light most favorable to the Commonwealth, we conclude that it was a reasonable inference that Appellant was not privileged or licensed to enter Cityplace. Accordingly, Appellant's first claim has no merit.

Appellant also raises a sufficiency challenge to his burglary conviction. *See* Appellant's Brief at 16-18. Under the subsection charged in this case, a person commits the offense of burglary if, with the intent to enter to commit a crime therein, the person "enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is

---

[4] We note that Appellant admitted to taking the photograph of victim's front door in his brief. *See* Appellant's Brief at 17 ("The fact that [Appellant] took a photo of [victim].").

- 10 -

present." 18 Pa.C.S. § 3502(a)(4). Appellant argues that the Commonwealth failed to prove that he intended to commit a crime in the Cityplace building, which was stalking. *See* Appellant's Brief at 17.

Under our Crimes Code, a person commits the crime of stalking when the person "engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in a reasonable fear of bodily injury or to cause substantial emotional distress to such other person." 18 Pa.C.S. § 2709.1(a)(1). Appellant argues that he only communicated with the victim once and that does not establish a repeated course of conduct to prove his stalking conviction. *See* Appellant's Brief at 17-18. Therefore, he reasons that, since the Commonwealth failed to prove his intent to stalk the victim through a single contact, his burglary conviction also failed because he had no intention to commit an underlying crime for purposes of the burglary statute. *See id.* at 18.

Here, the trial court concluded that the Commonwealth presented sufficient evidence to support Appellant's conviction for burglary. *See* Trial Court Opinion, 4/10/25, at 11. We agree with the trial court's conclusion as the fact-finder. First, Appellant baldly asserts that the Commonwealth only proved that he made one attempt at contacting the victim, which has no merit. The record demonstrates that Appellant contacted the victim multiple times through various social media platforms. *See id.* at 48. He appeared at

Cityplace approximately four times to try and gain entry into the complex. *See id.* at 19-21. Moreover, the victim testified that she was fearful of Appellant. *See id.* at 48-49. Viewing the totality of the evidence in the light most favorable to the Commonwealth as the verdict winner, the Commonwealth presented sufficient evidence to support Appellant's conviction of stalking, which in turn justifies his burglary conviction. Therefore, Appellant's second issue has no merit.

In his third issue, Appellant argues that the trial court erred when it imposed separate and consecutive sentences for his burglary and stalking convictions. *See* Appellant's Brief at 18. Appellant asserts that Section 3502(d) of the Pennsylvania Crimes Code requires that his sentence for stalking merge with his sentence for burglary. *See id.* at 19. Subsection (d) states: "[a] person may not be sentenced both for burglary and for the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree." 18 Pa.C.S. §3502(d).

He contends that if the evidence supports that Appellant had the intent to commit a crime after his entry for burglary, the crime he intended was stalking. *See id.* Since his stalking offense was graded as a misdemeanor, he concludes that the trial court should have merged the sentences for both stalking and burglary based on the plain meaning of the statute. *See id.* Therefore, he alleges that the trial court erred in concluding that Section

3502(d) does not apply because Appellant committed the crime of stalking outside the context of his burglary. *See id.*

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Leaner***, 202 A.3d 749, 784 (Pa. Super. 2019) (citation omitted). Under 42 Pa.C.S. § 9765, the Pennsylvania General Assembly has defined the circumstances under which convictions for separate crimes merge for the purpose of sentencing:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

Appellant's argument has no merit. The trial court explained that Appellant was charged with burglary because he entered the victim's apartment complex, Cityplace with the intent to commit a crime. ***See*** Trial Court Opinion (Post-Sentence Motion), 3/20/25, at 2-3[5]; ***see also*** Criminal Information, 8/19/24, at 1. Moreover, Appellant was charged with stalking for repeatedly messaging the victim on various social media platforms. ***See id.*** After reviewing the record, we agree with the trial court's finding that

---

[5] The trial court incorporated its opinion denying Appellant's post-sentence motion in its Rule 1925(a) opinion. ***See*** Trial Court Opinion, 4/10/25, at 2.

Appellant's conviction and sentence for stalking does not stem from his admitted intended conduct of gaining entry into Cityplace. Instead, it stems his separate criminal acts of repeatedly contacting the victim on social media platforms. Accordingly, Appellant's third issue is meritless.

In issue four, Appellant challenges the discretionary aspects of his sentence. *See* Appellant's Brief at 20. "The right to appellate review of the discretionary aspects of a sentence is not absolute and must be considered a petition for permission to appeal." *Commonwealth v. Davis*, 341 A.3d 808, 812 (Pa. Super. 2025) (citation omitted). Since Appellant is challenging the discretionary aspects of his sentence, he must invoke this Court's jurisdiction by satisfying a four-part test:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Harper*, 273 A.3d 1089, 1096 (Pa. Super. 2022) (citing *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation and brackets omitted)).

"Only if the appeal satisfies these requirements may we proceed to decide the substantive merits of Appellant's claim." *Commonwealth v. Luketic*, 162 A.3d 1149, 1159-60 (Pa. Super. 2017). We find that Appellant has met the first three requirements. *See Moury*, 992 A.2d at 170. He filed a timely appeal to this Court, preserved this issue for our review in his post-

sentence motion, and included a Rule 2119(f) statement in his brief. **See** Post-Sentence Motion, 3/11/25, at 2-3 (unpaginated); Appellant's Brief at 12-13. Therefore, we must decide whether Appellant has raised a substantial question for our review.

"The determination of whether a particular case raises a substantial question is to be evaluated on a case-by-case basis." **Commonwealth v. Neafie**, 341 A.3d 813, 818 (Pa. Super. 2025) (citation omitted). This Court will not look beyond the statement of questions involved and the prefatory Rule 2119(f) statement to determine whether a substantial question exists. **See Commonwealth v. Crawford**, 257 A.3d 75, 78-79 (Pa. Super. 2021) (citation omitted). Moreover, for purposes of determining what constitutes a substantial question, "we do not accept bald assertions of sentencing errors," but rather require an appellant to "articulat[e] the way in which the court's actions violated the sentencing code." **Commonwealth v. Malovich**, 903 A.2d 1247, 1252 (Pa. Super. 2006). "A substantial question exists only when appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Dortch**, 343 A.3d 298, 310 (Pa. Super. 2025).

Here, Appellant generally argues that the trial court did not rely upon sufficient facts to impose either an aggravated sentence or a sentence outside the Pennsylvania Sentencing Guidelines. **See** Appellant's Brief at 13 (citing **Commonwealth v. Fullin**, 892 A.2d 843, 847 (Pa. Super. 2006).

- 15 -

This Court has held that both a claim that the sentencing court imposed a sentence outside the aggravated range recommended by the Sentencing Guidelines, without sufficient justification, and a claim that the court imposed a sentence within the aggravated range, in the absence of a statement reasons for such, raises a substantial question. *See, e.g.*, *Commonwealth v. McLaine*, 150 A.3d 70, 76 (Pa. Super. 2016); *Commonwealth v. Griffin*, 804 A.2d 1, 8 (Pa. Super. 2002). Therefore, Appellant has raised two substantial questions, and we will address the merits of those claims.

Our standard of review for a challenge to the discretionary aspects of a sentence is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Reid*, 323 A.3d 26, 30–31 (Pa. Super. 2024) (quoting *Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted)). The rationale for the broad discretion and deference in this standard is that the sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (quoting *Commonwealth v. Ward*, 568 A.2d 1242, 1243 (Pa. 1990)).

When we conduct the merits analysis of a challenge to the discretionary aspects of a sentence, we are guided by the statutory requirements of 42 Pa.C.S. § 9781(c) and (d). **See Commonwealth v. Zeigler**, 112 A.3d 656, 661 (Pa. Super. 2015).

Here, Subsections 9781(c)(2)-(3) apply, as the trial court sentenced Appellant at the top of the aggravated range for burglary and outside of the Sentencing Guidelines' recommended range for stalking, and he contends that both departures from the recommended standard guideline ranges were clearly unreasonable. **See** 42 Pa.C.S. § 9781(c)(2)-(3). In reviewing the record, this Court considers: "(1) [t]he nature and circumstances of the offense and the history and characteristics of the defendant[;] (2) [t]he opportunity of the sentencing court to observe the defendant, including any presentence investigation[;] (3) [t]he findings upon which the sentence was based[; and] (4) [t]he guidelines promulgated by the commission. 42 Pa.C.S. § 9781(d).

A sentence is unreasonable if it was imposed "without express or implicit consideration" of the requirements outlined in Section 9721(b). **Walls**, 926 A.2d at 964; 42 Pa.C.S. § 9721(b). In imposing a sentence, the sentencing court shall consider, *inter alia*, "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Further, the sentencing court is required to consider the circumstances of the offense and the character of the defendant, paying

particular attention to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. **See Commonwealth v. Torres**, 303 A.3d 1058, 1065 (Pa. Super. 2023) (citing **Commonwealth v. Griffin**, 804 A.2d 1, 10 (Pa. Super. 2002)).

Although they must be considered, the Pennsylvania Sentencing Guidelines are not mandatory, and thus do not prohibit any sentence otherwise within the statutory maximum. **See Commonwealth v. Sheller**, 961 A.2d 187, 190 (Pa. Super. 2008); **Commonwealth v. Mitchell**, 883 A.2d 1096, 1107 (Pa. Super. 2005). "The requirement that the court provide a contemporaneous written statement is satisfied when the judge states his reasons for the sentence on the record and in the defendant's presence." **Commonwealth v. Durazo**, 210 A.3d 316, 321 (Pa. Super. 2019) (quotation marks and citation omitted). Finally, where the trial court had the benefit of a PSI, we can assume the trial court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988).

Appellant argues that the sentencing factors under Section 9721(b) did not justify the trial court's departure from the sentencing guidelines. **See** Appellant's Brief at 21. In fact, he notes that he had no prior arrests or criminal charges and only needed rehabilitation. **See id.** He asserts that the trial court relied on the nature of his offenses and impact of the victim, which was not compelling enough to justify an aggravated-range sentence and a sentence

substantially outside of the guidelines. *See id.* Additionally, Appellant asserts

that the facts of this case do not support his charges of stalking and burglary,

which has no merit as explained above. *See id.* at 22.

Upon review of the record, we find the sentencing court's consideration

of the pertinent statutory factors pursuant to Section 9721(b) is evident from

the sentencing hearing record. The sentencing court offered the following

statement of reasons for the imposed imprisonment terms:

> The [c]ourt has reviewed the PSI and all of its attachments, has listened to counsel's arguments and reviewed the victim impact statement.
>
> Before the [c]ourt is a 26-year-old male with some yellow flags, I'll say, regarding his mental health, meaning he had been hospitalized twice in [the] Dominican Republic and once in Columbia. The details of those hospitalizations are somewhat explained in the PSI.
>
> He has no criminal record. However, the[] facts in this [] case is of particular concern to this [c]ourt. The victim here was a total stranger, a newscaster who was popular in this community. He became fixated on her, broke into her building. And, thank goodness, she was out of the state at the time because who knows what his true intent was that day.
>
> He attempted to communicate with her through various social media attempts. And this particular woman was terrified. And so the recommendation here, the [c]ourt feels, is inappropriate given the serious nature of this offense. The [c]ourt will be sentencing in the aggravated range of sentence for the following reasons:
>
> One, the serious nature of the offense as stated already, the facts; two, the tremendous impact to the victim. And I say that because, when she testified, which was back in January, beginning of January, she took the stand[,] and she stated that she was incredibly fearful. She had the means to be able to move out of that apartment, but it still was a tremendous hindrance on someone to have to physically move because of their fear. She

constantly looks over her shoulder. She has nightmares and says that she's not safe anywhere, she doesn't feel safe anywhere.

Fast-forward to six weeks later. That fear and that terror continues. In her letter, she says that –[] this experience has left her with deep emotional and psychological scars and that the fear, the anxiety, and the sense of vulnerability has affected every aspect of her life. And, thus, this trauma continues forward and seems to have permanently scarred her emotionally.

Third, [Appellant] continues to exhibit aggressive behavior. His misconduct, as detailed in the PSI, was for aggravated assault, resisting and refusing an order and disruption. He spent 22 days in disciplinary segregation. And in the detail of the actual offense, it was assault, which, even when given orders to cease fighting, [Appellant] had to be physically separated by staff members in the jail.

And so[,] what we have here is the [c]ourt feeling that this is an individual who's unmedicated, unhinged[,] and of concern to this community.

N.T. Sentencing Hearing, 3/6/25, at 8-10.

The record reflects that the trial court considered all the relevant factors for Appellant's sentence. *See Commonwealth v. Mouzon,* 812 A.2d 617, 620-621 (Pa. Super. 2002) ("In every case in which the court imposes a sentence for a felony or a misdemeanor, the court shall make as a part of the record and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed."). The trial court also had the benefit of the PSI. *See Devers*, *supra*. The court did not merely double-count factors already considered by the Sentence Guidelines' recommendations. It carefully considered how the facts presented required substantial imprisonment to protect the public, address Appellant's rehabilitative needs, and address the tremendous negative impact that he

caused to the victim. Appellant's assertion that the trial court failed to look at mitigating factors such as his lack of criminal history and his rehabilitative needs is meritless. Essentially, Appellant's claim is asking us to reweigh his sentencing factors, which we will not do. *See Commonwealth v. Verma*, 334 A.3d 941, 947 (Pa. Super. 2025) (we "cannot reweigh sentencing factors and impose judgment in place of [the] sentencing court" where the sentencing court "was fully aware of all mitigating factors") (citation omitted). We find no abuse of discretion by the sentencing court. *Reid*, *supra*. Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/31/2025

**IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA**

**CRIMINAL DIVISION**

Filed
4/10/2025 3:19 PM
Clerk of Judicial Records
Lehigh County, PA

COMMONWEALTH OF PENNSYLVANIA )
)
vs. )    Case No. 2512/2024
)
WILMER ORTEGA FRANCO, )
Defendant )

**ORDER**

NOW, this 10th day of April , 2025, it appearing that the Defendant has filed a Notice of Appeal in the above-captioned matter; and it further appearing that the accompanying Memorandum Opinion satisfies the requirements of Pa. R.A.P. 1925(a),

**IT IS HEREBY ORDERED** that the Clerk of Courts – Criminal transmit the record in the above-captioned matter to the Superior Court forthwith.

BY THE COURT:

_____
Anna-Kristie M. Marks, J.

# IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA

## CRIMINAL DIVISION

Filed
4/10/2025 3:19 PM
Clerk of Judicial Records
Lehigh County, PA

COMMONWEALTH OF PENNSYLVANIA )
)
vs. ) Case No. 2512/2024
)
WILMER ORTEGA FRANCO, )
Defendant )

\* \* \* \* \* \* \* \*

APPEARANCES:

MICHAEL EDWARDS, ESQUIRE,
CHIEF DEPUTY DISTRICT ATTORNEY,
On behalf of the Commonwealth

MATTHEW MOTTOLA, ESQUIRE,
On behalf of Defendant

\* \* \* \* \* \* \* \*

## OPINION

ANNA-KRISTIE M. MARKS, J.

Defendant, Wilmer Ortega Franco, has filed an appeal from this Court's Order of March 20, 2025, which denied the Defendant's Post Sentence Motions. Accordingly, we are issuing this Opinion pursuant to the provisions of Pennsylvania Rule of Appellate Procedure 1925.

The relevant facts are as follows: After a nonjury trial conducted on January 8, 2025, the Defendant was found guilty of Criminal Trespass,[1] Burglary,[2] and Stalking.[3] Thereafter, on March 6, 2025, this Court sentenced the Defendant to the following: on the charge of Burglary, a term of imprisonment in a state correctional facility of not less than seven (7) months nor more than five (5) years; on the charge of Stalking, a term of imprisonment in a state correctional facility of

---

[1]    35 P.S. § 3503(a)(1)(i).
[2]    35 P.S. § 3502(a)(4).
[3]    35 P.S. § 2709.1(a)(1).

not less than twenty (20) months nor more than five (5) years. No further sentence was imposed on the charge of Criminal Trespass. The sentences were ordered to run consecutively to each other. The aggregate sentence imposed was not less than twenty-seven (27) months nor more than ten (10) years. On or about March 11, 2025, the Defendant filed Post Sentence Motion Pursuant to Pennsylvania Rule of Criminal Procedure Rule 720 that this Court denied on March 20, 2025. The within appeal followed on or about March 31, 2025.

On April 1, 2025, this Court instructed the Defendant to file of record and serve upon this Court a concise statement of errors complained of on appeal no later than April 22, 2025, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b). The Defendant timely complied with said Order. Within the Defendant's concise statement of errors complained of on appeal, he raises the issue of whether 18 Pa. C.S.A. § 3502(d) required this Court's sentence for Stalking to merge with its sentence for Burglary, as well as raises a challenge to this Court's sentence. These issues have been addressed by this Court's Opinion denying the Defendant's Post Sentence Motions of March 20, 2025. Consequently, this Court relies on said Opinion of March 20, 2025, and incorporates it herein.

In addition, within the Defendant's concise statement of errors complained of on appeal, he challenges the sufficiency of the evidence. This argument is without merit.

The Defendant argues that the verdict was not supported by sufficient evidence. A claim challenging the sufficiency of the evidence is a question of law which asserts that there is insufficient evidence to support at least one material element of the crime for which the Defendant was convicted.

2

<u>Commonwealth v. Lyons</u>, 833 A.2d 245, 258 (Pa. Super. 2003). The standard for reviewing sufficiency challenges was explained in the following manner by the Superior Court of Pennsylvania:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.

<u>Commonwealth v. Taylor</u>, 831 A.2d 661, 663 (Pa. Super. 2003), *quoting* <u>Commonwealth v. DiStefano</u>, 782 A.2d 574, 582 (Pa. Super. 2001). In addition, the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. <u>Commonwealth v. Hunzer</u>, 868 A.2d 498, 505 (Pa. Super. 2005). Any doubts regarding a defendant's guilt are properly resolved by the finder of fact unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances. <u>Id</u>. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. <u>Id</u>. If the finder of fact reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then the evidence will be deemed sufficient to support the verdict. <u>Id</u>. at 506.

This Court notes that a person is guilty of Criminal Trespass "if, knowing that he is not licensed or privileged to do so, he enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof." 18 Pa. C.S.A. § 3503(a)(1)(i). Additionally, a person commits the offense of Burglary if, with the intent to

3

commit a crime therein, the person enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present." 18 Pa. C.S.A. § 3502(a)(4). Finally, "a person commits the crime of stalking when the person engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person." 18 Pa. C.S.A. § 2709.1(a)(1).

In the instant case, the evidence established that Blakely McHugh was employed by WFMZ as a morning reporter since December of 2022. She resided at City Place Apartments located at 902 West Hamilton Street, Apartment 706, Allentown, Lehigh County, Pennsylvania. This apartment complex is not open to the public and has three (3) exterior doors, all of which require a key/scan card to enter. The exterior doors lead to a main lobby area that features a seating area, front desk, elevators, and mail room. In order for a visitor to gain access into the secured building, the visitor must request access from the resident. Specifically, the visitor needs to search the name of the resident in an electronic directory intercom system located at two (2) of the exterior doors to the apartment complex. Upon electronically notifying the resident of the guest's presence at the exterior door by the guest pressing the button coinciding with the name and apartment number of the resident, the intercom system takes a photograph of the guest. Upon receiving this electronic request, the resident can "buzz" the guest in or simply deny access.

4

If a resident denies access, the guest is able to leave an electronic message for the resident.

On April 26, 2024, Ms. McHugh went to California to tend to personal/family matters and remained there until the first week of June 2024. On April 27, 2024, at 3:38 P.M., while Ms. McHugh was in California, she received a request on her phone from an individual, later identified as the Defendant, Wilmer Ortega Franco, wanting to gain access to the building. (C. Ex. 1); (C. Ex. 2). Not knowing the individual, Ms. McHugh denied this person access. (C. Ex. 2). At 3:41 P.M., Ms. McHugh then received an electronic message from this person stating, "be a good friend." Then, at 3:42 P.M., the same individual sent another message which included the email address of "benitoortega30@icloud.com." (C. Ex. 3). Later that day at 5:42 P.M., Ms. McHugh received another request to gain access to her building. (C. Ex. 4). Once, again, Ms. McHugh denied access to this person. Upon receiving this second request, Ms. McHugh grew concerned and contacted City Place Apartment security to advise them of the situation. Security assured Ms. McHugh that they would look into the matter.

Thereafter, on the morning of April 29, 2024, Ms. McHugh received an email from David Herrington, WFMZ's IT technician and digital media developer, indicating that WFMZ had a concern about communication that was being submitted to their website/app. (C. Ex. 6); (C. Ex. 7); (C. Ex. 8); (C. Ex. 9); (C. Ex. 10); (C. Ex. 11); (C. Ex. 12); (C. Ex. 13); (C. Ex. 14); (C. Ex. 15); (C. Ex. 16); (C. Ex. 17); (C. Ex. 18); (C. Ex. 19); (C. Ex. 20); (C. Ex. 21); (C. Ex. 22); (C. Ex. 23); (C. Ex. 24); (C. Ex. 25); (C. Ex. 26); (C. Ex. 27). Specifically, they had received, *inter alia*, a photograph of Ms. McHugh's apartment door by

5

which she has a pig statue. (C. Ex. 26). Mr. Herrington previously had been to Ms. McHugh's apartment and recognized the pig statue. The comment associated with the post was "quiero concerla por favooooorrrrrr, I'm going to the army." (C. Ex. 26). All of the posts submitted to WFMZ between April 1, 2024 and April 29, 2024 had listed "Wil" or "Wilmer" as the name of the person who uploaded the images, along with the email address of francowilmer6@gmail.com. (C. Ex. 6); (C. Ex. 7); (C. Ex. 8); (C. Ex. 9); (C. Ex. 10); (C. Ex. 11); (C. Ex. 12); (C. Ex. 13); (C. Ex. 14); (C. Ex. 15); (C. Ex. 16); (C. Ex. 17); (C. Ex. 18); (C. Ex. 19); (C. Ex. 20); (C. Ex. 21); (C. Ex. 22); (C. Ex. 23); (C. Ex. 24); (C. Ex. 25); (C. Ex. 26). However, on April 30, 2024, an uploaded image of a text exchange with "Jacky," which was consistent with the other screenshots of text conversations with "Jacky," listed ubereats1330@gmail.com as the email address and "Mr. Foodie" as the person who uploaded the image. (C. Ex. 27); (C. Ex. 11); (C. Ex. 12); (C. Ex. 13); (C. Ex. 22); (C. Ex. 24); (C. Ex. 25). Many of the uploaded images included contact information such as an address of 242 E. Mosser Street (C. Ex. 14); (C. Ex. 16); (C. Ex. 17); (C. Ex. 18), a last name of "Ortega" (C. Ex. 6); (C. Ex. 7); (C. Ex. 8); (C. Ex. 14); (C. Ex. 15); (C. Ex. 16); (C. Ex. 17); (C. Ex. 18); (C. Ex. 19); (C. Ex. 20); (C. Ex. 21), a telephone number of 484-408-2477 (C. Ex. 6); (C. Ex. 9); (C. Ex. 14), and Titles of "Playita Little Bitch" (C. Ex. 17); (C. Ex. 18); (C. Ex. 19); (C. Ex. 20) or "I want my BM" (C. Ex. 25); (C. Ex. 26). Based on these concerning communications received by WFMZ, Mr. Herrington notified the News Director, who in turn contacted the police.

Later that day at 2:57 P.M., but before WFMZ had an opportunity to file a police report, Ms. McHugh received another electronic notification that

6

the same person was requesting access to her building. (C. Ex. 5). Ms. McHugh rejected the call and notified the Allentown Police Department of the situation. (C. Ex. 5). Officer Pablo Vazquez of the Allentown Police Department was dispatched to City Place Apartments, 902 W. Hamilton Street, Allentown, for an unwanted person. He was provided with a physical description of the suspect based on the photograph that was taken by City Place Apartment's electronic intercom system (blue floral shirt, jeans, and medallion necklace), as well as the name of "Wilmer" by Ms. McHugh. (C. Ex. 5). Officer Vazquez, along with Officer Keegan Connelly, checked all floors of the apartment complex and did not encounter anyone who fit the description. However, when Officers Vazquez and Connelly responded to a possible disturbance two (2) blocks away at Sports and Social Allentown, 645 Hamilton Street, Officer Vazquez encountered the suspect sitting alone in a booth in the sports bar. Consistent with the description provided, the suspect was wearing a blue floral shirt and jeans and had a silver medallion necklace of the Mercedes symbol around his neck. Officer Vazquez approached him and asked him for his identification. The suspect was identified through his identification as the Defendant, Wilmer Ortega Franco, residing at 242 E. Mosser Street, Allentown. Officer Vazquez advised the Defendant not to return to the apartment complex and that he would be arrested if he returned. The Defendant indicated his understanding and assured Officer Vazquez that he would not return to the apartment building.

Shortly thereafter, at 3:58 P.M., Ms. McHugh received a Facebook message saying, "You got me on [sic] trouble." (C. Ex. 30). Upon checking her Facebook messages, Ms. McHugh saw that she had received a message from

7

"Wilmer Ortega Franco" earlier that day at 8:24 A.M. Specifically, Wilmer Ortega Franco had sent her a photograph of her front door with the pig statue by the door jamb; the same concerning photograph that WFMZ had received. (C. Ex. 30); (C. Ex. 26). In fact, he had added music to the photograph in order to turn it into a video. (C. Ex. 29); (C. Ex. 30). Under the photograph, he posted, "I want [sic] show u the real life, we don't need a million." (C. Ex. 29); (C. Ex. 30). Another Facebook post at 9:32 A.M. commented, "We are living in a simulation ... I'm the emulator ... And Neo want a new Kingdom." (C. Ex. 30). Ms. McHugh also noted that on April 26, 2024 at 1:58 A.M., Wilmer Ortega Franco posted "The most beautiful journalist" and then at 2:02 P.M., "Wait for me, just 1 more month." (C. Ex. 28).

In addition, under the name "Wil" and the handle "_theyhatethisnigga," Ms. McHugh received numerous comments and replies to her Instagram posts. (C. Ex. 31); (C. Ex. 32); (C. Ex. 33); (C. Ex. 34); (C. Ex. 35); (C. Ex. 36). Indeed, on or about April 18, 2024, Ms. McHugh had blocked this account because she found the quality and quantity of comments that she received to be alarming. Ms. McHugh believes that the Defendant then made a new Instagram account under the handle "psyc0bvnny" with the name of "Benito Ortega" in order to continue to view her posts and comment. (C. Ex. 41). Overall, all of the communications and attempts at communications made Ms. McHugh very fearful and caused her emotional distress. Indeed, Ms. McHugh had nightmares while she was in California and she felt very unsafe.

In addition, on April 29, 2024, at approximately 3:00 P.M., Officer Jeramy DeVaul of the Allentown Police Department was working the desk at headquarters when Sergeant Joshua Brubaker advised him that WFMZ had

8

called with regard to making a police report on Ms. McHugh's behalf. Sergeant Brubaker explained to Officer DeVaul that Ms. McHugh would be calling to personally make the report. At approximately 3:40 P.M., Officer DeVaul received the awaited telephone call from Ms. McHugh. When speaking with Officer DeVaul, she appeared to be very concerned and afraid over the circumstances in which she found herself. Charges were approved at 8:30 P.M. on April 29, 2024. The Defendant was arrested on April 30, 2024 and released on bail.

On May 1, 2024, the Defendant entered the headquarters of the Allentown Police Department with regard to a car accident in which he was involved. When the Defendant identified himself as Wilmer Franco, Officer DeVaul recognized his name and inquired of his sergeant if he could interview the Defendant. After receiving permission, Officer DeVaul asked the Defendant if he would be willing to talk to him about what he had been arrested for and advised the Defendant that he could refuse to speak with him. The Defendant indicated that he would talk with Officer DeVaul. Consequently, Officer DeVaul escorted the Defendant to a nearby interview room. The conversation was recorded and the Defendant was again advised that he was free to leave at any time. (C. Ex. 37). The Defendant informed Officer DeVaul that his email address was Francowilmer6@gmail.com and he lived at 242 East Mosser Street, Allentown. He also provided a phone number of 484-408-2477 and an Instagram account under the username of _theyhatethisnigga. (C. Ex. 37). The Defendant admitted to sending Ms. McHugh the Facebook message on April 26, 2024 which commented, "The most beautiful journalist." (C. Ex. 28). However, the Defendant denied sending any other Facebook messages to her and

9

indicated that his laptop had been stolen and that he had been having issues with his identity being fraudulently used. Indeed, while the Defendant also admitted that the text exchanges depicted in many of the screenshots uploaded to WFMZ were between him and a friend named Jacky, he denied having uploaded them to WFMZ. (C. Ex. 27); (C. Ex. 11); (C. Ex. 12); (C. Ex. 13); (C. Ex. 22); (C. Ex. 24); (C. Ex. 25). Similarly, the Defendant admitted seeing the photograph of Ms. McHugh's apartment door with the pig statue in his iCloud account, but denied sending it to anyone. (C. Ex. 26). When the Defendant was shown the photographs taken by City Place Apartment's intercom system, the Defendant stated, "It looks like me." (C. Ex. 1); (C. Ex. 2); (C. Ex. 3); (C. Ex. 4); (C. Ex. 5). Additionally, the Defendant indicated that he never got into the building, although he would have liked to. Also, the Defendant admitted to Officer DeVaul that _theyhatethisnigga is his username for Instagram and that psyc0bvnny was a newer Instagram account that he had created. (C. Ex. 31); (C. Ex. 32); (C. Ex. 33); (C. Ex. 34); (C. Ex. 35); (C. Ex. 36); (C. Ex. 40); (C. Ex. 41).

The Defendant testified at trial that his laptop had been stolen and that his identity had been fraudulently used. While the Defendant admitted to commenting on Ms. McHugh's stories on Instagram and posting the first post on Facebook, the Defendant denied any other electronic communication with Ms. McHugh. Indeed, the Defendant indicated that he watched the WFMZ morning show, but denied sending any of the photographs or messages to their website/app. The Defendant also stated that prior to his arrest he did not know where Ms. McHugh lived and that he had never been to her apartment despite photographic evidence undermining this assertion. (C.

10

Ex. 1); (C. Ex. 2); (C. Ex. 3); (C. Ex. 4); (C. Ex. 5). The Defendant also contradicted Officer Vazquez's testimony and testified that Officer Vazquez approached him in Sports and Social Allentown on April 29, 2024 with regard to a stolen bicycle, not an unwanted person at the City Place Apartments. This Court found the Defendant's testimony to be contrary to the evidence and not credible.

Viewing all the evidence and all reasonable inferences arising therefrom in the light most favorable to the Commonwealth, it is clear that the evidence was sufficient to enable a finder of fact to conclude that all the elements of the offenses were established. Indeed, at the conclusion of the non-jury trial, this Court had no doubt that the Defendant, knowing that he was not licensed or privileged to do so, gained entry into Ms. McHugh's apartment building without permission, license, or privilege and repeatedly requested access to her home. Furthermore, this Court had not doubt that the Defendant entered the apartment building with the intent to commit a crime therein. Indeed, the evidence established that the Defendant engaged in a course of conduct, through repeated acts and communication, which demonstrated either an intent to place Ms. McHugh in reasonable fear of bodily injury or to cause her substantial emotional distress. In light of the abundant evidence enumerated above, any challenge to the sufficiency of the evidence must fail.

Accordingly, the Defendant's appeal should be dismissed.

DATED: 4/10/2025

BY THE COURT:

_____
Anna-Kristie M. Marks, J.

11

4/10/2025
Email - DA, Attorney Mottola